**BRECHT CO. v. ROBINOWITZ.**   (No. 8699.)*

(Court of Civil Appeals of Texas. Galveston.
June 4, 1925. Rehearing Denied June 25,
1925.)

1. **Fraudulent conveyances** ⬅️47—**Purchaser
of market, complying with Bulk Sales Act,
held not liable to creditors omitted from list
of creditors.**

Where purchaser of market in accordance
with Bulk Sales Act (Rev. St. art. 3971), 10
days before taking possession of property, de-
manded and received list of creditors sworn to
by seller and notified all creditors listed therein
10 days before paying them, he was not liable
to creditors of seller omitted by seller from
sworn list, having fully complied with act and
being entitled under act to take seller's sworn
statement at its face value.

2. **Fraudulent conveyances** ⬅️47—**Under Bulk
Sales Act, 10 days' notice to creditor, given
before paying for property, held sufficient, ir-
respective of time of taking possession.**

Where the Legislature in 1915 (Laws 1915,
c. 114) amended Bulk Sales Act (Rev. St. art.
3971) by inserting provision, "and unless the
purchaser or transferee shall at least 10 days
before taking possession of such merchandise
or merchandise and fixtures, or paying there-
for, notify," etc., it meant to say that required
notice before paying for property would be
sufficient, irrespective of when possession might
be taken.

Appeal from Harris County Court, at Law;
Roy F. Campbell, Judge.

Action by the Brecht Company against Joe
Robinowitz. From a judgment for defendant,
plaintiff appeals. Affirmed.

Cole, Cole & O'Connor, and Bennett B. Pat-
terson, all of Houston, for appellant.

Harry W. Freeman, of Houston, for ap-
pellee.

GRAVES, J. This cause involves a con-
struction of R. S. art. 3971, as applied to this
state of facts, which we find to be in all ma-
terial respects undisputedly shown in the
record brought up.

On April 10, 1923, appellee, Robinowitz,
bought from C. E. McFarland, as the owner
of a place of business in Houston known as
"the Central Meat Market," the fixtures
thereof, taking possession of them that day;
contemporaneously with the purchase, Rob-
inowitz, in good faith demanded and received,
as in compliance with our "Bulk Sales Act,"
an affidavit from McFarland purporting to be
a true and correct statement of the names,
etc., of all his creditors, which, however, he
later found to be incorrect because of the
omission of several creditors with whom this
litigation has nothing to do, and in like man-
ner demanded a further one; accordingly, on
the next day, April 11, McFarland made and
gave Robinowitz the affidavit here involved,
which purported to be a compliance with the
statute and to give a list of his only credi-
tors, including their names, residences, the
amounts due each, and stated:

"That he owes no other persons or corpora-
tion anything for either merchandise or fix-
tures, or other articles purchased in connection
with the conduct of said business, and that
the above named are all of his creditors and
that there are none others."

Robinowitz, having at that time no knowl-
edge of the existence of any creditors not
named in this new affidavit he had required,
immediately notified all those that were
named of his purchase of the fixtures, and
then, after waiting more than 10 days there-
after, and still having no knowledge of the
existence of any others, paid them all in full
the amounts so listed as being due them, in
fact some of them more, and some months
later, that is, in June or July, paid McFar-
land $1,074 as the final balance of the purchase
price due him after deduction for the sums
theretofore paid direct to his creditors; sub-
sequent to this final settlement with McFar-
land, it developed that appellant, and two
other creditors with whom we are not con-
cerned, had been designedly on his part left
out of this sworn list of April 11, none of
them having been included in the first list
either, and that on the dates of both affida-
vits he had owed appellant a debt for equip-
ments furnished him in the operation of this
particular business, while he was the owner
of it, of $215.

[1] In this action appellant sought to re-
cover this amount of the appellee, under al-
legations that in buying the fixtures he had
failed to comply with the requirements of
the act referred to. In addition to other
facts, which have been included in the pre-
ceding statement, the jury found in response
to a further special issue that Robinowitz did
"at least 10 days before taking possession of
or paying for the Central Meat Market de-
mand and receive from McFarland a writ-
ten list of the names and addresses of the
creditors of the said McFarland with the
amount of the indebtedness due or owing
each of such creditors and certified to by
said McFarland under oath as a full, accu-
rate, and complete list of his creditors and
of his indebtedness," and judgment upon the
verdict followed in his favor.

Under our construction of the statute, the
judgment was proper; this for at least two
reasons: (1) Robinowitz, having no knowledge
aliunde of appellant's existence as a credi-
tor, was entitled to take the seller's sworn
statement made pursuant to the terms of the
statute at face value; (2) having, by the un-
controverted testimony, notified all the cred-
itors named in the list more than 10 days be-
fore paying for the fixtures, he had done all
that was required of him.

Appellant's view would require the act to

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 11, 1925.

be interpreted as meaning that a purchaser in such circumstances, whatever his own good faith in the matter, accepts at his peril the sworn statement of the seller and must lose if the latter, through fraud or inadvertence, fails to schedule all his creditors. We cannot believe that the Legislature intended any such result, but rather that when the purchaser has properly required the seller to furnish him the list provided for under the prescribed oath, he may in good faith accept and act upon it as reflecting the truth. The affair it deals with is that of the seller, his business, and the responsibility for presenting the actual status of his indebtedness is put upon him by the requirement that he make the oath.

[2] It further seems clear to us that when, in 1915 (Laws 1915, c. 114) the Legislature came to amend this statute and for the first time inserted in it the disjunctive provision, "and unless the purchaser or transferee shall at least 10 days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify," etc., it meant to say that the required notice before paying for the property would be sufficient, irrespective of when the possession might be taken, and vice versa.

These conclusions require an affirmance of the trial court's judgment, our findings as to the facts having eliminated as immaterial the other questions discussed in the briefs of the parties.

Affirmed.