LANGBEN v. GOODMAN.　(No. 8707.)*

(Court of Civil Appeals of Texas. Galveston. June 24, 1925. Rehearing Denied Oct. 8, 1925.)

1. **Corporations ⬉116—Contract for sale of corporation stock and notes representing indebtedness thereof held to import valuable consideration.**

Contract for sale of corporation stock and notes securing indebtedness thereof *held* to import a valuable consideration under Negotiable Instruments Law (Acts 1919, 36th Leg. c. 123, § 24; Vernon's Ann. Civ. St. Supp. 1922, art. 6001—24).

2. **Corporations ⬉116—Contract for sale of corporation stock and dividends held not invalid for want of consideration, in that corporation never earned dividend.**

Contract for sale of corporation stock and unaccrued dividends thereof and claims against corporation *held* not invalid for want of consideration, in that corporation did not earn dividends, where purchaser later resold claims to corporation and retained stock, neither party at time of transaction anticipating bankruptcy of corporation, and that it would never earn a dividend.

3. **Corporations ⬉156—Agreement of corporation with holders of its preferred stock construed.**

Agreement of corporation with holders of its preferred stock *held* to manifest an intention, in view of practical construction by the parties, that holders of such stock should be paid the stipulated rate whenever earned, or, if not made by operation at all, then at dissolution out of the assets.

4. **Contracts ⬉170(1)—Practical construction of parties controls interpretation of doubtful agreement.**

Where language of an agreement is doubtful, practical construction, deliberately given it by the parties, should control its interpretation.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by J. H. Langben against Burleigh Goodman. From the judgment, plaintiff appeals. Reversed and rendered.

Stewarts and Brantly Harris, all of Galveston, for appellant.

Elmo Johnson, Roy Johnson, and Marsene Johnson, Jr., all of Galveston, for appellee.

GRAVES, J. After pointing out that this appeal, in effect, constitutes a protest against only so much of the trial court's judgment as denied appellant a recovery on the two of the notes sued upon which represented unpaid dividends on the preferred stock involved, the appellee concedes that appellant makes a correct statement of the suit as follows:

"This suit was brought by appellant, who was plaintiff below, against Burleigh Goodman, appellee, defendant below; being a suit on three promissory notes, one in the sum of $1,000, due 180 days after June 19, 1922, one for the sum of $1,000, due 240 days after said date, and one for the sum of $400, due 300 days after said date; said notes bearing 8 per cent. interest, and attorney's fees in the event suit was filed for collection of said notes.

"Defendant pleaded lack of consideration for the execution of said three notes, and defendant also pleaded fraud.

"Plaintiff filed supplemental petition setting forth the contract under which the notes sued on were given, said agreement being briefly set out at follows:

"'Galveston, Texas, June 19, 1922.

"'It is this day mutually agreed between Burleigh Goodman and J. H. Langben, both of Galveston, Tex., as follows:

"'Mr. Langben owns $7,000 par value stock of the Oleander Motor Car Company which Mr.

Goodman agrees to purchase on the following conditions and in the following manner:

| | |
|---|---|
| For the above stock | $5,000 00 |
| Accrued interest, about | 1,400 00 |
| For amount loaned Oleander Motor Car Company about nine months ago | 1,000 00 |
| Amount loaned about one month ago | 2,000 00 |
| | $9,400 00 |
| Less bill of Oleander Motor Car Company against J. H. Langben, about | 600 00 |
| | $8,800 00 |

—which Mr. Goodman agrees to pay as follows:

| | |
|---|---|
| Cash | $4,400 00 |
| In 60 days | 1,000 00 |
| In 120 days | 1,000 00 |
| In 180 days | 1,000 00 |
| In 240 days | 1,000 00 |
| In 300 days | 400 00 |
| | $8,800 00 |

—with interest at 8 per cent. per annum from date until paid, to be evidenced by notes, and to be secured by the said preferred stock first above mentioned.

" 'It is understood that Mr. Goodman will pay the Oleander Motor Company the bill they have against Mr. Langben, and will be entitled to collect from the said Oleander Motor Car Company interest on the preferred stock and the $3,000 loaned said company by Mr. J. H. Langben, together with interest thereon.

" '[Signed]    J. H. Langben.
" '[Signed]    Burleigh Goodman.'

"The three notes sued on being the last three notes of the series mentioned in said contract.

,"Defendant filed supplemental answer, setting up fraud, failure of consideration, and pleaded want of consideration to $1,400 of said notes, as it was given for preferred dividends on stock of the Oleander Motor Car Company claimed to be due to Langben, when, in fact, defendant alleged Langben had no claim to said dividends.

"At the close of the evidence, at the proper time, plaintiff requested instructed verdict for the amount sued for, which motion the court overruled, and over plaintiff's objection, submitted the case to the jury on the following special issue: 'At the time of the transaction had between Mr. Langben and Mr. Goodman did Mr. Langben honestly entertain the view that he had the claim for the dividends on the stock against Oleander Motor Car Company amounting to some $1,450.00, and did he have substantial grounds therefor? Answer yes or no. In determining this question it is not necessary for you to believe that the claim by Langben against the Oleander Motor Car Company above specified was a just one or not.'

."To which special issue the jury answered: 'No.' The effect given to this answer by the court was to eliminate $1,400 of the amount sued for, and the court rendering judgment for appellant in the sum of $1,285.79, being the $1,-000 note plus interest and attorney's fees."

Appellant advances as ground for reversal these propositions:

"No. 1. The trial court should have instructed a verdict for plaintiff for amount sued for, as there was not sufficient evidence of want of consideration or fraud to go to the jury.

"No. 2. There was no evidence upon which the jury could find that Mr. Langben did not entertain the view that he had a claim for the dividends on the stock against the Oleander Motor Car Company amounting to the sum of $1,450, or that he did not have substantial grounds therefor; the undisputed evidence showing that he did honestly entertain such a claim, and did have such a claim.

"No. 3. The court erred in submitting special issue submitted to the jury, for the reason that as a matter of law Langben did have a valid claim against the Oleander Motor Car Company for said dividend, and his belief as to whether or not he had such claim was immaterial."

We sustain them all, and reverse and render the judgment in his favor, as prayed for in his petition.

There was no dispute about the controlling facts; the item listed in the quoted contract between the parties as "Accrued interest, about $1,400," is the same one that the appeal has to do with, and by mutual assent of the litigants meant accrued or unpaid dividends on Mr. Langben's $7,000 of stock in the Motor Company rather than interest proper. Under this contract of sale, as the appellee himself testified, appellant delivered to him his $7,000 of stock and all claims of every kind he had against the company, including this one for $1,400 of accrued dividends on that stock, and appellee paid him therefor $4,400 in cash, and gave him $4,400 in notes, the last two of them representing the same amount as the dividends referred to, thereby securing control of the company. On August 15, 1922, after having thus, on June 19, 1922, acquired all these claims of appellant against the company, appellee resold them to the company under the following contract, the $7,000 of stock not being included:

"And said company hereby employs the said Goodman as chairman of the board of directors from August 1, 1922, to January 1, 1923, at a salary of $25 a week, and he shall preside at all meetings of the board of directors.

"Par. 2. Said company this day pays to said Goodman $1,416.60 on account of the indebtedness, and also gives to said Goodman its four certain promissory notes each in the sum of $530.78, bearing interest at 8 per cent., due and payable on September 15, October 15, November 15, and December 15, 1922, respectively and said notes containing the usual 10 per cent. attorney's fee clause, and a further provision that the failure to pay any two consecutive notes of said series matures all other notes thereof at holder's option, and said Goodman hereby acknowledges receipt of said cash payment, and said four notes in full payment of all debts and demands due him by said company to date hereof."

Under this denouement alone, it is difficult to see how the appellee can be in position to assert failure of consideration for what he thus within less than two months parted with for a quid pro quo not only satisfactory to

himself but also apparently fully compensatory; at the same time, of course, retaining all the stock he had gotten with it from appellant.

It is true the Motor Company afterwards went into bankruptcy, being placed there by the act of the appellee himself, and that its trustee claimed that the company had never in fact earned such a dividend, but at the time of this transaction neither party to it anticipated such a result, and the appellee, being fully advised in the premises, testified about its condition then:

"At the time we made this deal the company was getting along fairly well, and as far as I could tell and as far as anybody else knew that was down there, it had every prospect in the world of making money and paying itself out."

His purpose in buying this stock was to get in full control of the business himself, in which he by that leverage succeeded, his acquirement of it enabling him to operate it and to elect his own board of directors as late as November 6 following.

[1] The notes sued upon, and the face of the contract of sale upon which they rest, themselves import a valuable consideration under our Negotiable Instruments Law (Acts 1919, 36th Leg. c. 123, § 24; Vernon's Statutes, 1922 Supplement, art. 6001—24).

In addition to the fact that the contract of sale upon its face recites that the interest, or dividends, to the amount of about $1,400 had "accrued," that is, in the sense here used, had already become creditable to appellant's account, there is no intimation anywhere in the record that the Motor Company itself ever disputes owing appellant that or any of the other claims against it he sold and transferred to the appellee.

[2] Since the plea of failure of consideration was based solely upon the claim that the corporation did not earn dividends and the appellee was in no position either to assert or claim the benefit of that situation against appellant, if true, it was without evidence to support it.

As concerns the claim of fraud, we have searched the record in vain for any evidence whatever of it; it simply does not exist, and consequently there is nothing to discuss upon this feature.

While the opinion might properly end here, it may not be amiss to briefly add our views upon the other features presented in the briefs, especially as they have a reflex effect upon what has gone before:

It follows from the sustaining of propositions 2 and 3 that in our opinion, appellant not only had as a matter of law a bona fide claim against the Motor Company for the dividends at the time he so assigned the same to the appellee, which left no issue in that respect for the jury, but that there was no evidence in support of the jury's contrary finding.

The stock of appellant being "preferred," its status with reference to dividends was fixed by this contractual provision in the minutes of the Motor Company of date March 25, 1920:

"The preferred stock shall be paid (if earned) 10 per cent. dividends payable quarterly, 2½ per cent. quarterly. It shall have preference both as to dividends and assets.

"In the event of the failure of the company to pay four successive quarterly dividends to the preferred shareholders, then and thereafter until all past dividends are paid the preferred shareholders shall have equal voting rights and power with the common stockholders. Otherwise the entire conduct of the business shall be in the common stockholders.

"At any time after 3 years the company may after 30 days' due notice by mail to the last address of the preferred shareholders of record at its option retire any and all preferred stock at $110 per share and accrued dividends."

[3] This agreement of the corporation with the holders of its preferred stock, carrying no specification to the contrary, not only meant, under well settled authority (7 R. C. L. 287, 288; Hazeltine v. Belfast, etc., Ry. Co., 79 Mo. 411, 10 A. 328, 1 Am. St. Rep. 330; note 6 Ann. Cas. 216; Fidelity Trust Co. v. Lehigh Valley R. R. Co., 215 Pa. 610, 64 A. 82, 97 Ann. Cas. 613; note 73 Am. St. Rep. 238; 27 L. R. A. 147; 6 Ann. Cas. 217; Fletcher, Cyc. Corp. (vol. 6, p. 250), that the dividends were to be cumulative, but was mutually so intended and construed by the parties here; indeed, this contract went further and extended the cumulative dividend rule applied by these authorities to the assets of the corporation in case of dissolution, thereby more plainly still evidencing the understanding between it and the holders of its preferred stock that they should be paid the stipulated return whenever earned, or, if not made by operation at all, then at dissolution out of the assets.

[4] If the language of this agreement be doubtful, however, the practical construction deliberately given it by both parties, which we have said was the same, should control its interpretation. Bounds v. Hubbard City, 47 Tex. Civ. App. 233, 107 S. W. 56; Oil Co. v. Harris (Tex. Civ. App.) 230 S. W. 237.

The appellee testified that appellant became angry on discovering that the dividends had not been credited to his account, after which they were so credited, and the secretary-treasurer of the Motor Company issued a statement of date January 1, 1922, so showing. In this connection appellant testified at length as follows:

"At the time I bought this Oleander Motor Car Company stock it was my understanding it would pay 10 per cent. in four equal annual-quarterly installments, and that it would be cumulative and guaranteed in priority to any

assets or earnings of the company. It was my understanding this dividend would be paid whether the company earned it or not; all my stock was this preferred stock. I have not owned heretofore any stock, preferred stock, which guaranteed a dividend in the manner in which it was my understanding this would; I did understand that about this particular stock. This dividend was to be paid or credited to my account, whether the company earned it or not, and should be a credit in case of liquidation out of the assets. In case of liquidation I would have a claim for the amount of my preferred stock and the accrued dividends thereon, which would take precedence over the common stock but not precedence over creditors. In event of liquidation, after the payment of the creditors and before the division of the assets among the common stockholders, I understood that I was to receive the amount of the preferred stock, plus the accrued dividends thereon. "I did not insert the clause in the minutes that '10 per cent. dividends were to be paid if earned.' I was not aware of the language employed in the minutes, and I was somewhat astonished subsequently when the dividends were not paid that the matter had not been made more clear, and, in accordance with the understanding, I brought the matter up at a meeting of the directors; because after the preferred stock dividends had lapsed for four periods, I was invited to the board, and accredited with voting rights on my preferred stock, the same as if it had been common stock. I then brought up this matter about the preferred dividends; the minutes of March 25, 1920, were referred to; the language was read, and I was assured that that language confirmed my understanding, that the dividends would be cumulative and would be credited to my account, and in case of mishap I would receive that before the common stockholders received any division. The resolution says that preferred stockholders shall be paid the dividend if earned, but that does not say that he would not be credited with it. It was perfectly plain to me the reason I didn't get the money was because they said it had not been earned, but certainly that was never suggested as any reason why I should not be credited with it and paid if the assets, in event of liquidation, should provide the money with which to pay me, before the common stock participated in the division. * * *

"As to what evidence there was of the indebtedness of $1,400 that Oleander Motor Car Company owed me on accrued dividends: At a meeting of the directors in January, 1922, Mr. Goodman handed me in his handwriting a statement of the assets and liabilities of the company which showed the accrued preferred stock dividends due me up to that time, December, 1921, $1,050. The minutes in the minute book and the provision in the preferred stock automatically accrued to me $175.00 each three months. That is the way the $1,440 is figured. I will explain, that I put down 'about $1,440' for the reason that the $175 would not accrue until June 30, and the transaction was consummated on the 19th of June, so that there was not quite $1,440 due at that time. * * *

"At the time the note of $1,400 was executed I did expect Mr. Goodman to pay that $1,400 in event that dividend was earned; I did then and I do. I thought so then and I think so yet. He was securing control of the company, he was owner of the building, he represented to me that he had in contemplation the command of adequate capital to make a success of it, and he wanted it, and took it all over."

No witness disputed these statements; on the contrary, the whole course of the transaction shows they reflected the true situation.

So that it indisputably appears that all those concerned at that time in the matter of what was meant by the provision relating to dividends upon the preferred stock, that is, the corporation itself, its secretary-treasurer, who was the appellee here, and the appellant, the holder of the only preferred stock of the concern extant, months prior to this transaction construed and understood it as meaning that the 10 per cent. per annum, or 2½ per cent. quarterly, amounts would accrue with the mere lapse of the time, and were as such to be credited to appellant's account whether actually made as profits or not, and that when the two parties here came to make the contract under consideration, they so interpreted it, and accordingly specified in figures the estimated accumulation to that date. As a matter of law, therefore, appellant did have a valid claim against the Motor Company for the stipulated dividend, which in this proceeding he was entitled to assert against the appellee, and there was no evidence of any probative force before the jury tending to show that he entertained any different view.

It follows from these conclusions that appellant should have been awarded recovery for the full amount sued for, with interest, as sought in his petition. The trial court's judgment has therefore been reversed, and this court's judgment has been entered so decreeing.

Reversed and rendered.