**MIDLAND SHOE CO. et al. v. A. L. & K. DRY GOODS CO., et al. (No. 2604.)\***

(Court of Civil Appeals of Texas. Amarillo. Feb. 3, 1926. Rehearing Denied March 10, 1926.)

**1. Contracts** ⚖═170(1).

In construing ambiguous instruments, great weight will be given interpretation placed upon instruments by parties.

**2. Fraudulent conveyances** ⚖═47—Sale of merchandise and fixtures owned by corporation, although accompanied also with transfer of corporate stock, held in violation of Bulk Sales Law (Rev. St. 1925, art. 4001).

In garnishment proceeding to fix purchaser of store fixtures as trustee for creditors of former seller, original sale of merchandise and fixtures by owner of capital stock in corporation *held* violation of Bulk Sales Law (Rev. St. 1925, art. 4001), notwithstanding capital stock of corporation was incidentally transferred at same time.

**3. Fraudulent conveyances** ⚖═47.

Sales in violation of Rev. St. 1925, art. 4001, are void, not merely voidable or illegal.

**4. Fraudulent conveyances** ⚖═196.

Subsequent purchasers from grantee in sale in violation of Rev. St. 1925, art. 4001, are not in position of innocent purchasers.

**5. Fraudulent conveyances** ⚖═295(4).

Evidence *held* not to sustain plea that creditors were estopped from setting up invalidity of

sale in violation of Bulk Sales Law (Rev. St. 1925, art. 4001) by failing to establish any claim to property for more than year prior to purchase by present defendants.

On Motion for Rehearing.

6. Appeal and error ⟞⟝832(4).

Trial errors urged on motion for rehearing will not be considered where not found in record.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Suit in garnishment by the Midland Shoe Company and others against the A. L. & K. Dry Goods Company and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Oxford & Oxford and M. J. Baird, all of Plainview, and McGown, McGown & Anderson, of Fort Worth, for appellants.

Read, Lowrance & Bates and Austin C. Hatchell, all of Dallas, for appellees.

JACKSON, J. This is a suit in garnishment instituted in the district court of Hale county on January 14, 1924, by the Midland Shoe Company against the A. L. & K. Dry Goods Company, a copartnership, of Plainview, Tex., based on a judgment for the sum of $856.76 theretofore obtained in said court by the Midland Shoe Company against Cecil & Company, a corporation, of Plainview, Tex. A number of other judgment creditors of Cecil & Co. were permitted to intervene in the suit, and the Midland Shoe Company, and said interveners will be called plaintiffs.

The A. L. & K. Dry Goods Company answered, denying that it was indebted to Cecil & Co. at any time, or had in its possession any property or effects belonging to said company, or that it knew of any person or persons indebted to said company; asked for $250 attorney's fees; and prayed that the company and members thereof be discharged with their costs and attorney's fees.

The plaintiffs contested the answer of the garnishees, and pleaded: That Cecil & Co., while engaged in the mercantile business at Plainview, Tex., purchased from each of them merchandise, for the price of which their respective judgments were obtained, and that said judgments were valid and unpaid. That C. W. Cecil, the president, acting for Cecil & Co., on or about May 23, 1922, entered into a contract with W. W. McLarty, by the terms of which the company agreed to sell all of its merchandise and fixtures; and on or about June 16, 1922, a final contract of settlement was made between the parties, and the merchandise and fixtures of the business were attempted to be sold and delivered to W. W. McLarty. That the parties to the contract of sale failed to comply with the Bulk Sales Law, and W. W. McLarty, therefore, became the trustee of Cecil &

Co., and held the merchandise and fixtures in trust for the plaintiffs, who were at that time creditors of said company. That thereafter the purchaser sold the fixtures to S. C. Auld, who took possession thereof, and he thereby became the trustee of Cecil & Co., and held said fixtures in trust for the plaintiffs and other creditors. That at the time of the attempted purchase of the fixtures by S. C. Auld, they had not been removed from the store occupied by Cecil & Co. That on or about August 8, 1922, S. C. Auld, Lawrence Ludeman, George Ludeman, and A. C. Kinkead formed a partnership known as the A. L. & K. Dry Goods Company, and engaged in business in Plainview, Tex. That S. C. Auld furnished said fixtures to said dry goods company as his interest therein, and that said dry goods company took possession of said fixtures and became the trustee of Cecil & Co. and the plaintiffs. That said dry goods company still holds said fixtures in trust, which are of the reasonable value of $5,000. Each of the plaintiffs sets out his respective judgment against Cecil & Co., and the amount thereof.

The A. L. & K. Dry Goods Company, Lawrence Ludeman, George Ludeman, and A. C. Kinkead, the defendants, replied to the contravention of plaintiffs by general demurrer, general denial, and admitted entering into the partnership as alleged; that on October 30, 1922, S. C. Auld, joined by his wife, made, executed, and delivered to the Farmer's Mercantile Company of Perryton, Tex., their promissory note for $6,000, due six months after date, and gave their chattel mortgage upon said fixtures to secure the payment of said note; that the mortgage provided that the Farmers' Mercantile Company, upon default in the payment of the note, could, in person or by agent, take possession of and sell the property at either public or private sale, with or without notice; that on or about the 10th day of November, 1922, the Farmers' Mercantile Company, for a valuable consideration, assigned the note and mortgage lien to C. W. Cecil, who thereafter, for a valuable consideration, and before maturity, assigned said note, with the mortgage lien, to Sanger Bros., Higginbotham-Bartlett-Logan Company, Eli Walker Dry Goods Company, and Utz & Dunn, who purchased without any notice that the plaintiffs were claiming any interest in, or lien upon, the property described in said mortgage, and were innocent purchasers thereof; that S. C. Auld and his wife defaulted in the payment of the note and, with the consent of him and his wife, the Farmers' Mercantile Company, C. W. Cecil, and his assignees of the note, on the 5th day of January, 1923, the property was sold under the provisions of the mortgage to the defendant George Ludeman for $5,000, which was the highest price obtainable, and was conveyed to him by a sufficient

bill of sale, and the proceeds applied to the payment of the note; that the defendant George Ludeman was an innocent purchaser of the fixtures, without any notice of any right or claim of the plaintiffs; and after the mortgage sale S. C. Auld had no further interest in the firm, and A. C. Kinkead sold his interest on August 24, 1922, to George and Lawrence Ludeman, who still continue the business under the same firm name. They further allege that the plaintiffs are estopped, as a matter of equity, from asserting liability against the defendants, because for more than a year before the fixtures passed into their hands, with full knowledge of all the facts, each of the plaintiffs neglected to establish any claim against the property, but permitted the fixtures to remain in the hands of S. C. Auld; and the defendants hold under and through defendant George Ludeman, and are entitled to all the defenses asserted by him, and are, themselves, innocent purchasers without notice, and for value.

The case was submitted to the court without the intervention of a jury, and at the conclusion of the evidence he entered judgment in favor of the defendants, appellees herein, and against the plaintiffs, who are appellants. The court filed no findings of fact or conclusions of law.

The record discloses that on May 23, 1922, W. W. McLarty of Perryton, Tex., who is styled "first party," and C. W. Cecil of Plainview, Tex., called "second party," entered into a contract, by which the first party contracted to convey and deliver to second party a section of land in consideration of the sum of $16,640; that second party assumed the payment of about $624 due the state of Texas, and the balance of the consideration for said land was to be paid in property. The provisions of the contract necessary to a disposition of this case are as follows:

"III. The second party agrees to transfer and assign to the first party all the capital stock of the Cecil & Co., a private corporation doing a mercantile business at Plainview, Tex., said capital stock to be of equal value of the mercantile stock now on hand by the said corporation in its store in Plainview, Tex., based on invoice, plus five per cent. cost and carriage. It is understood and agreed that there is a certain indebtedness due as bills payable and accounts payable for merchandise by said corporation the amount of which shall be deducted from the amount of invoice, and the value of said capital stock. Invoice to be based on present prices regardless of costs at the time of purchase.

"IV. It is further agreed that the first party will, after invoice and the deduction of indebtedness as above mentioned, invoice from the Cecil-Ramsel Company store at Mart, Tex., and out of the ladies department, beginning with the shoe department, goods sufficient to pay the balance due on the lands above described on the same invoice basis as above described, to take all of each line, as he goes.

"V. It is agreed that the first party will liquidate the present indebtedness, out of the sales within ninety days from date, or within a reasonable time thereafter, it being understood and agreed that the proceeds of sales after the deduction of operating expense, shall be applied to the liquidation of said indebtedness.

"VI. It is agreed that the fixtures in the Plainview store shall be invoiced as invoiced by Barrier Bros., to Cecil & Co., to the value of about $6,400."

That on June 16, 1922, the parties entered into the following contract:

"Memorandum of final settlement of contract between C. W. Cecil and W. W. McLarty, in which C. W. Cecil sold the Plainview stock to W. W. McLarty for the sum of $45,682.83, being all of said stock and fixtures; also $10,440.-32, amount of Mart stock, making a total of fifty six thousand, one hundred twenty-three dollars and fifteen cents, for both stocks, after deducting the $16,016.00 for section No. 16, in Ochiltree county, Texas.

"The balance on stock, by W. W. McLarty and Farmers Mercantile Company is $40,107.15.

"This is a part of and a final settlement of contract between us, after taking stock.

"The said C. W. Cecil does not owe to exceed on said Cecil & Co. stock at Plainview, Texas, over forty thousand one hundred seven dollars and fifteen cents."

The record shows that C. W. Cecil made the contract of sale for Cecil & Co. with W. W. McLarty, who was president of, and contracting for, the Farmers' Mercantile Company, a corporation; that some time after this sale the Farmers' Mercantile Company sold to S. C. Auld the fixtures that had belonged to Cecil & Co. for the sum of $6,000, evidenced by a note and secured by a mortgage covering the fixtures; that this note was assigned by the Farmers' Mercantile Company to C. W. Cecil, who pledged the note and mortgage to Sanger. Bros. to secure the payment of $1,000 worth of new goods, and with Higginbotham-Bartlett-Logan Company, Eli-Walker Dry Goods Company, and Utz and Dunn, as security for goods purchased by Cecil & Co. before the sale to the Farmers' Mercantile Company; that S. C. Auld defaulted in the payment of the note, after which, by some arrangement, a private sale was had under the terms of the mortgage, and George Ludeman purchased said fixtures for the sum of $5,000, transferring them to the A. L. & K. Dry Goods Company, and taking an additional interest in said company for the $5,000; that the Farmers' Mercantile Company is no longer in existence, having taken bankruptcy.

Mr. Cecil testified that he made the contract for the sale of the goods, wares, merchandise, and fixtures of Cecil & Co. of Plainview, but did not comply with the Bulk Sales Law because he understood that a person purchasing all the corporate stock became a stockholder and the Bulk Sales Law did not apply in such cases; that he wrote and sent

letters in the name of Cecil & Co. to all of its creditors after the sale, in which he stated:

"We are writing each of our creditors the following: * * * We sold the Plainview store to the Farmers' Mercantile Company of Perryton, Texas, and they have moved the stock to that point. * * * We did not comply with the bulk sales law, nor notify you of the sale, for the reason that we wanted the Farmers' Mercantile Company to be liable as well. * * * Our loss at Plainview January 1, 1922, was enormous. In fact we had to sell two of our incorporated stores in order to place this store in such a condition that our Plainview creditors would receive one hundred cents on the dollar. * * * We have matters now arranged so we can carry out our plans, whereby paying our creditors every dollar due them."

That at the time he sold the fixtures and stock of goods Cecil & Co. owed the debts evidenced by the respective judgments of the plaintiffs for wares and merchandise purchased by Cecil & Co. prior to the sale of the Plainview stock; that the books of Cecil & Co. of Plainview were at Cleburne, and that he had paid many of the accounts of Cecil & Co. after the sale; that none of the stockholders of Cecil & Co. received anything from the sale, because the corporation owed more than the value of the stock; that Cecil & Co. at the time of the sale was engaged in the dry goods business at Plainview, and that he, S. C. Auld, and W. J. Russell were the stockholders.

The record reveals that the correspondence had with the creditors of Cecil & Co. after the sale was with C. W. Cecil, who wrote in the name of Cecil & Co.

S. C. Auld testified that he was a stockholder in Cecil & Co. and the manager of the corporation; that he purchased the fixtures, which were never moved out of the building used by Cecil & Co.; that he, together with the other members, formed the copartnership of the A. L. & K. Dry Goods Company to carry on a mercantile business; that the fixtures represented his interest in the partnership; and that after the sale of the Cecil & Co. stock to W. W. McLarty, Cecil & Co. ceased to do business in Plainview, and carried on no business there after that date.

W. W. McLarty testified that he was the president of the Farmers' Mercantile Company, and for it purchased the corporate stock, together with all the dry goods, wares, merchandise, and fixtures of Cecil & Co., and moved the stock to Perryton, leaving the fixtures.

The record further shows that in February, 1923, the directors of the Farmers' Mercantile Company secured an amendment of the charter of Cecil & Co. authorizing the removal of the place of business from Plainview, Tex., to Perryton, Tex.; and that the business was operated by W. W. McLarty for a while at Plainview as Cecil & Co. We do not find in the record any transfer of the capital stock of Cecil & Co. to W. W. McLarty or to the Farmers' Mercantile Company, and neither appellants nor appellees in their briefs have pointed out such testimony.

[1, 2] The contract of date May 23, 1922, and the memorandum of final settlement of date June 16, 1922, between the parties must be construed together, and we think that the two instruments, properly interpreted, disclose a sale of the merchandise and fixtures, and that the agreement to transfer and assign the capital stock was merely an incident to such sale. If these instruments are not clearly subject to this interpretation, then, obviously, they are ambiguous, and, because of such ambiguity, great weight should be given to the interpretation placed on these instruments by the parties. Langben v. Goodman (Tex. Civ. App.) 275 S. W. 841; Livingston Oil Corporation v. Waggoner (Tex. Civ. App.) 273 S. W. 903. It will be noted that the memorandum of agreement makes no reference to the capital stock, but deals exclusively with the sale of goods; that C. W. Cecil, the president of Cecil & Co., retained the old books of said company, notwithstanding the purchaser had assumed the indebtedness outstanding against the corporation of Cecil & Co.; that C. W. Cecil continued correspondence with the creditors in the name of Cecil & Co.; that in the testimony of all the witnesses pertaining to the sale they speak of it as a sale of the goods, wares, and merchandise and the fixtures, and mention the capital stock incidentally; that Cecil & Co. in the letters written by its officers to its creditors advised them of the sale of the store at Plainview without any reference to the capital stock. It is uncontroverted that no effort was made to comply with the Bulk Sales Law. It is our opinion that this record discloses a sale of the merchandise and fixtures in bulk, and that the purchaser thereof became trustee, holding the property for the benefit of the creditors of Cecil & Co.

In Owosso Carriage & Sleigh Co. v. McIntosh & Warren, 179 S. W. 257, 107 Tex. 307, L. R. A. 1916B, 970, the Supreme Court of this state, after holding the Bulk Sales Law Constitutional, says:

"In considering this question it should be remembered that the purchase by defendants in error from Sweet, however innocently intended, was in open violation of the bulk sales law, and, under section 1 thereof, 'void as against creditors of the seller.' There was, then, no real sale, in law, but merely a change of possession. The parties could not accomplish that which was prohibited by law. The possession was transferred from Sweet to the defendants in error, which left them holding it in trust for the benefit of Sweet's creditors, with the title still in Sweet. This necessarily follows as the result of the attempted sale being rendered void by the statute. * * * When the defendants in error sold the merchandise, the title to which

remained by law in Sweet, they became indebted to Sweet for its value. Having sold and converted property which, in law, belonged to Sweet, it obviously follows that they owed him for its value. It is true, the law would not aid Sweet in recovering its value from the defendants in error; for, having acted in the sale in open violation and defiance of a statute, public policy would deny him a remedy, and leave the parties to the legal wrong where it found them."

Under this decision the sale by Cecil & Co. of the goods and fixtures to the Farmers' Mercantile Company passed no title as against the creditors; therefore, the resale by the Farmers' Mercantile Company to S. C. Auld, the general manager of Cecil & Co., passed no title to him as against the creditors of Cecil & Co.; and the mortgage given by him attempting to fix a lien against the fixtures in favor of the Farmers' Mercantile Company was void, and the sale of the property at private sale in compliance with the terms of the provisions of a void mortgage would pass no title to the purchaser at such sale.

Article 4001 of the Revised Statutes of 1925 provides:

"The sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or transferor, shall be void as against the creditors of the seller or transferor, unless the purchaser or transferee demand and receive from the transferor a written list of names and addresses of the creditors of the seller or transferor with the amount of the indebtedness due or owing to each and certified by the seller or transferor under oath to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser or transferee shall at least ten days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify personally or by registered mail each creditor whose name and address is stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof. Any purchaser or transferee who shall not conform to the provisions of this law shall, upon application of any of the creditors of the seller or transferor become a receiver, and be held accountable to such creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale or transfer."

This statute expressly provides that a bulk sale shall be void as to creditors unless its provisions are complied with.

In Washer v. Smyer et al., 211 S. W. 985, 109 Tex. 398, 4 A. L. R. 1320, Chief Justice Phillips, speaking for the Supreme Court, holds:

"There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities, issuing out of it, shall be utterly void."

In speaking of a negotiable note, he says:

"It is not sufficient that it issue from a transaction prohibited by law, or one even denounced as criminal. To avoid it in the bona fide holder's hands there must be a constitutional or statutory provision which expressly, or by unavoidable implication, declares it or the transaction of which it is a part, to be void."

He cites many authorities in support of his conclusion.

[3, 4] The Bulk Sales Law is not to be interpreted by the authorities construing statutes which make transactions illegal only, nor by the decisions construing statutes for the violation of which there is a penalty provided, but, in our opinion, it should be classed and construed, when invoked by creditors, with statutes that declare transactions void; hence, appellees are not, under this record, innocent purchasers.

[5] In our opinion, the testimony is not sufficient to sustain appellees' plea of estoppel. Neither is their contention as to insufficient service tenable.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Appellees insist in their motion for rehearing that we are in error in holding that the property involved in this suit can be held in the garnishment proceedings directed against the partnership of the A. L. & K. Dry Goods Company, because at the time of the institution of the suit and the service of citation, said partnership had been dissolved by the withdrawal of two of its members, and the partnership as originally composed no longer existed, and that the A. L. & K. Dry Goods Company, which owned the property at the time of the institution of the suit, was composed of different members, and therefore constituted a different partnership.

It is admitted by appellees, both in their pleadings and in the evidence, that the A. L. & K. Dry Goods Company, after its membership was limited to George and Lawrence Ludeman, acquired the fixtures involved, and was in possession of, and claiming ownership thereto, at the institution of and trial of the suit. Under the pleadings of appellants and appellees, this suit resolved itself into a controversy as to whether or not the A. L. & K. Dry Goods Company, the members of which were George and Lawrence Ludeman only, held title to the fixtures in trust for the appellants and the other creditors of Cecil & Company of Plainview, Tex.

The A. L. & K. Dry Goods Company, Lawrence Ludeman, George Ludeman, and A. C. Kinkead answered, joining issues with appellants as to whether or not said Dry Goods Company and its members, George and Lawrence Ludeman, held the title to the fixtures involved in trust for the appellants and other creditors of Cecil & Co. of Plainview, Tex., and as said fixtures were still in the

possession of, and title thereto claimed by, said company, George and Lawrence Ludeman, in our opinion, it became immaterial whether or not the property was impounded by the garnishment proceedings, and hence such question was not discussed, contenting ourselves with stating that the contention of appellees as to insufficient service was not tenable. Neither did we hold, as asserted by appellees, that a sale of the entire capital stock of a corporation is in violation of the Bulk Sales Law. Our holding is that the transaction between C. W. Cecil, acting for Cecil & Co. of Plainview, and W. W. McLarty, acting for the Farmers' Mercantile Company of Perryton, as reflected by the contracts and evidence, show a bulk sale, in violation of the Bulk Sales Law.

[6] In their motion for new trial, appellees present a great number of things which they assert occurred at and during the trial of the case in district court, but which they admit are not found in this record; hence, they will not be considered.

Appellees state in their motion that every letter written by C. W. Cecil for Cecil & Co. is on the letter heads of the Cleburne store. This statement is not correct, because the letter, a part of which is quoted in the original opinion, does not purport to be written on the letter heads of the Cleburne store, though it does purport to have been written in Cleburne, Tex.

Appellees, in their pleading, request that the court, if it should determine that they hold the title to the fixtures in trust for the creditors of Cecil & Co. of Plainview, appoint a receiver for the purpose of determining, if in addition to appellants there were other creditors of Cecil & Co. entitled to participate in the trust funds, in order that an equitable distribution thereof should be made and appellees protected against suit by such other creditors. The court having found in favor of appellees, no receiver was appointed. However, if upon another trial the occasion arises, we are confident that the trial judge will appoint a receiver, or enter the necessary order for an equitable distribution of the trust fund among all the creditors so as to protect appellees.

Appellees also contend that we were in error in holding that they were not innocent purchasers of the fixtures, for the reason that they held title in trust for appellants and the other creditors. In support of this contention, they call our attention to Smith-Calhoun Rubber Co. v. McGee Rubber Co. (Tex. Civ. App.) 235 S. W. 321; Friedman & Mellinger v. Maier (Tex. Civ. App.) 238 S. W. 1013; and Collins-Decker Co. v. Crumpler (Tex. Com. App.) 272 S. W. 772. These cases announce the doctrine that neither of the parties, the seller and purchaser, who violate the Bulk Sales Law, can avail himself of such violation to defeat the transaction, as public policy would deny either of them a remedy.

In the instant case the creditors of the seller are invoking the bulk sales statute which says, as to creditors, a sale without compliance therewith shall be void. In interpreting this statute, the Supreme Court, in Owosso Carriage & Sleigh Co. v. McIntosh & Warren, 179 S. W. 257, 107 Tex. 307, L. R. A. 1916B, 970, cited in the original opinion, holds that a sale in violation of the statute is void as to creditors.

The motion is overruled.