**JOHNSTON v. M. SYSTEM STORES, Inc., et al.**

No. 3754.

Court of Civil Appeals of Texas. Amarillo.

March 9, 1932.

Rehearing Denied April 13, 1932.

Vickers & Campbell, of Lubbock, for appellant.

Bean & Klett and Wilson, Randal & Kilpatrick, all of Lubbock, and Carl Rountree, of Lamesa, for appellees.

HALL, C. J.

On January 15, 1929, the appellant, Miss Johnston, recovered a judgment in the district court of Lubbock county against W. L. Hendrick in the sum of $4,375.04. The suit was upon a note executed by W. L. Hendrick to appellant and was two years past due when the judgment was rendered. Based upon said judgment, on August 13, 1929, she sued out a writ of garnishment against the M. System Stores, Inc. Prior to the date of the judgment against him, Hendrick was in the grocery business at Lamesa, operating what is known as "The M. System Grocery." He had purchased the trade-name from the M. System Manufacturing Company on January 27, 1926. On January 7, 1929, eight days before Miss Johnston recovered her judgment against him, W. L. Hendrick, claiming individual ownership of the meat market fixtures, sold them in bulk to J. M. Marks, but retained possession of them, agreeing to pay Marks $40 per month for their use. On May 24, 1929, prior to the institution of the garnishment proceedings, he contracted to sell and did sell all furniture and fixtures, including all grocery shelving, fixtures of the meat market, and the salable stock of groceries. The property was invoiced on June 9, 1929. The consideration of $5,250 for the fixtures was to be paid in cash on delivery, and likewise cash was to be paid for the groceries when invoiced. $1,000 was deposited with the written contract in the First National Bank of Lamesa in escrow and the sale was to be consummated on June 10, 1929. W. L. Hendrick made the sale in the name of M. P. Hendrick. Marks' name does not appear in the bill of sale. As a prerequisite to the completion of the sale, it was stipulated that the Bulk Sales Law should be complied with and proof furnished the purchaser that all creditors had been paid by W. L. Hendrick before the consummation of the deal. The merchandise and fixtures were delivered to the purchaser, M. System Stores, Inc., June 29, 1929. $3,000 in cash of the total consideration was paid on July 6, 1929, to W. L. Hendrick as an advancement. The total consideration agreed to be paid for the merchandise and fixtures was $10,482.23, $5,250 being the value of the fixtures and $5,232.23 the value of the merchandise. The

Bulk Sales Law was never complied with. The purchaser sold out the merchandise and removed the fixtures to Lubbock, where they were stored.

The garnishee, M. System Stores, Inc., through its president, Roy Furr, filed an answer in garnishment August 20, 1929, in which it sets up the facts with reference to the sale, alleged in part that M. P. Hendrick, acting by and through W. L. Hendrick, or the said W. L. Hendrick individually, furnished the garnishee an unverified statement of the list of creditors. It states the amount for which the property was invoiced, alleging that there was a balance of $6,482.23 unpaid by the garnishee for the store, "for which sum the garnishee is indebted to whoever is entitled to receive the same." That subject to the facts thereinbefore set out and except as stated, the garnishee was not indebted to the defendant W. L. Hendrick in any sum and was not when said writ of garnishment was served, etc.

The answer shows that M. P. Hendrick and J. M. Marks have filed a suit in the district court of Dawson county, Tex., against the M. System Stores, Inc., making the First National Bank of Lamesa a party defendant with W. L. Hendrick and the garnishee prays that the said M. P. Hendrick, J. M. Marks, the First National Bank of Lamesa, and W. L. Hendrick be cited to appear and answer in this suit in order that garnishee may be protected from a double recovery and from having to pay twice for the property purchased.

The parties named appeared and answered.

The case was tried to the court without a jury, and resulted in a judgment that the appellant, Miss Johnston, recover nothing and pay all costs, except such items as were specially taxed against other parties; that the M. System Stores, Inc., recover nothing except its costs from Miss Johnston, together with an attorney fee of $500. It was further decreed that W. L. Hendrick recover nothing, and that he pay all costs incurred by him. That $2,500 of the $6,482.23 which the garnishee had paid into court and the $1,000 in the hands of the Lamesa Bank be paid to J. M. Marks and the balance thereof to M. P. Hendrick. That the bank recover from the M. System Stores, Inc., the sum of $100 as attorney's fees.

■ The first contention to be considered is presented by the fourth proposition, which is that, because plaintiff, Miss Johnston, failed to controvert by affidavit the garnishee's answer to the effect that it was not indebted to defendant W. L. Hendrick in any sum, etc., the trial court was required to accept the garnishee's answer as true, citing R. S. art. 4094; First National Bank of

Hale Center v. Wilson (Tex. Civ. App.) 22 S.W.(2d) 546.

The trouble with this proposition is it is not sustained by the record. As shown by the above quotations from the answer, garnishee did not positively deny an indebtedness, but set out the facts and tendered the money into court to be paid to whoever was legally and justly entitled thereto. Article 4094 provides that the plaintiff may controvert the garnishee's answer under oath if he "should not be satisfied with the answer." When the garnishee assumed the position of a stakeholder only and paid the money into the registry of the court, and by its answer offered to pay the fund in its hands to whoever was justly entitled to it, there was nothing in such an answer with which plaintiff could be dissatisfied, and a reply, under oath, was not necessary. City of San Antonio v. Stevens (Tex. Civ. App.) 126 S. W. 666; Swearingen v. Wilson, 2 Tex. Civ. App. 157, 21 S. W. 74.

■ Another reason why this proposition should be overruled is that it was not necessary for Miss Johnston to resort to garnishment or other supplementary proceedings in order to recover. Gardner v. Goodner Wholesale Gro. Co., 113 Tex. 423, 256 S. W. 911; Midland Shoe Co. v. A. L. & K. Dry Goods Co. (Tex. Civ. App.) 281 S. W. 344; Nash Hardware Co. v. Morris, 105 Tex. 217, 146 S. W. 874.

■ These cases hold that the purchaser who does not comply with the provisions of R. S. art. 4001 (the Bulk Sales Law) is liable as trustee to the extent of the value of the goods and fixtures received by him, so it may be conceded that the garnishment proceedings are null and void without in any degree affecting the appellant's right to recover.

■■ According to the uncontradicted testimony of W. L. Hendrick, he sold the meat market fixtures for $2,500 to J. M. Marks, and introduced a written contract with Marks, providing that for $40 per month rental he should have the use of such fixtures. They were not removed from the store, and thereafter, when W. L. Hendrick, as the manager of the business, sold all the fixtures and merchandise, including the meat market fixtures, to the M. System Stores, Inc., Marks' name did not appear in the bill of sale. These fixtures were transferred by W. L. Hendrick, who claimed to be the sole owner thereof, to Marks, eight days before Miss Johnston obtained her judgment against W. L. Hendrick. The indebtedness upon which her judgment is based had existed for several years prior thereto, and, in order to successfully prosecute her rights under the provisions of the Bulk Sales Law, it was not necessary for her to first reduce her claim to a judgment, so the sale of the meat mar-

ket fixtures as to her comes within the inhibition of the Bulk Sales Law, since the provisions of the law were not complied with by either Marks or W. L. Hendrick. Under the holding of this court in Midland Shoe Co. et al. v. A. L. & K. Dry Goods Co., 281 S. W. 344, the M. System Stores, Inc., cannot be innocent purchasers.

As originally enacted, the Bulk Sales Law, Acts of 1909, page 66, Vernon's Sayles' Statutes, 1914, art. 3971, did not include fixtures, but in 1915 the law was amended and provides that "the sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or transferor, shall be void as against the creditors of the seller or transferor, unless," etc.

■ The appellee contends, under this article, that the sale of the meat market fixtures by W. L. Hendrick to Marks is not within the provisions of the Bulk Sales Law, because it appears that Marks purchased only fixtures, when article 4001 only condemns the sale of fixtures in connection with merchandise. There seems to be a want of harmony upon this question, but in the Midland Shoe Company Case [(Tex. Civ. App.) 281 S. W. 344 and (Tex. Civ. App.) 3 S.W.(2d) 475] it appears that only the fixtures of Cecil & Co. were sold to S. C. Auld and wife, who afterwards conveyed them to the Ludemans. The Ludemans were held as trustees for the benefit of the plaintiffs in those cases, and a writ of error was refused by the Supreme Court. And it appears that fixtures alone were sold in the case of Brecht Co. v. Robinowitz (Tex. Civ. App.) 275 S. W. 213. We can conceive of no good reason why the Legislature should require fixtures to be sold in connection with merchandise before the sale could be condemned, and do not believe that such is the legislative intent. To so construe the act would be, in effect, to hold that a merchant who desired to dispose of old fixtures that were out of date, and no longer adequate for use in his business, could not sell them and put in new, improved, and up-to-date fixtures, without bringing himself within the terms of the Bulk Sales Law. We think that would be an unjust construction of the act, and that to apply it where a party who owns only fixtures sells them all, with the evident purpose of disposing of them permanently, is more in accord with what we conceive to be the legislative intent.

According to the uncontradicted testimony of W. L. Hendrick, he sold the meat market fixtures for $2,500 cash, and that he held an interest in the partnership business with his brother and father to the extent of $2,300. We are asked to reverse the judgment and render it in favor of Miss Johnston for the amount of her judgment against W. L. Hendrick, but on account of the state of the record we are not able to do so. The M. System Stores, Inc., would be liable to her, not for the amount Hendrick received for the meat market fixtures, nor for the amount of money he had invested in the business long prior to the sale to appellee, but the liability would be limited to the reasonable market value of such fixtures, or their intrinsic value, if no market value could be shown, and in addition the value of his pro rata share in the merchandise when the M. System Stores, Inc., acquired it. The payment of the $3,000 to W. L. Hendrick was unauthorized and illegal without previous compliance with the requirements of the Bulk Sales Law, and the fact that W. L. Hendrick received said sum and appropriated it to himself in no way affects the rights of Miss Johnston. The $3,000 was paid by the M. System Stores, Inc., at its peril, and the effect of such payment, if approved, would be to enable W. L. Hendrick to defeat the claim of his creditors, which it was the very purpose of the Bulk Sales Law to prevent.

The judgment will be reversed, with the instruction that the trial court ascertain the value of W. L. Hendrick's interest as above discussed, and, if it be equal to or greater than her judgment, then that judgment be rendered in favor of appellant for the amount of her judgment, with interest and cost, against W. L. Hendrick.

Reversed and remanded, with instructions.

### On Motions for Rehearing.

M. P. Hendrick, J. M. Marks, and the M. System Stores, Inc., have filed motions for rehearing.

We have carefully considered the motions, and, believing that the contentions therein contained have all been disposed of by the original opinion, they are overruled.

However, in the light of the motions, we have decided to reform that part of the original opinion and judgment which reversed the judgment of the trial court and remanded the case, with instructions, and, instead of such order, the judgment will be reversed, and the cause remanded generally and without any specific instructions.

**Reversed and remanded.**