# OCTOBER, 1915

OWOSSO CARRIAGE & SLEIGH COMPANY v. McINTOSH & WARREN.

No. 2417. Decided October 13, 1915.

**1.—Bulk Sales Law—Constitution.**

The Act of March 1, 1909 (Laws, 31st Leg., p. 67) prohibiting the transfer of stocks of merchandise in bulk except under specified restrictions, is not unconstitutional nor beyond the power of the Legislature as an unreasonable restriction upon the power of owners of property; but is a valid exercise of the police power of the State. Nash Hardware Co. v. Norris, 105 Texas, 217, approved and followed. (P. 312.)

**2.—Bulk Sales Law—Resale by Purchaser—Garnishment of Proceeds.**

The purchaser of a stock of goods sold in bulk in violation of the statute (Act of March 1, 1909, Laws 31st Leg., p. 67) acquires no title to the goods, but holds them, and their proceeds if he has sold them to another, in trust, and liable to the claims of such unlawful seller's creditors. The creditors may reach same by garnishment against him, though served after his resale, holding him as one indebted to the first and unlawful seller for the proceeds. LeGierse v. Kellum, 66 Texas, 243; Kessler v. Halff, 21 Texas Civ. App., 91; Blum v. Goldman, 66 Texas, 623, distinguished. (Pp. 312-314.)

**3.—Garnishment—Controverting Answer—Pleading.**

Where the answer of a garnishee denying property of or indebtedness to the defendant is controverted by showing a sale of defendant's stock of merchandise to him in bulk, in violation of the statute (Laws, 31st Leg., Ch. 27) it was not necessary to go further by alleging that it had been sold by him and that his indebtedness was for the proceeds. (Pp. 314, 315.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Brown County.

The Owosso Carriage & Sleigh Company brought suit against one Sweet and issued garnishment against McIntosh & Warren, on which they recovered judgment. This was on appeal reversed and remanded with instructions to render judgment for the garnishees. The company thereupon obtained writ of error.

*I. J. Rice,* for plaintiff in error.—Appellee pursued the proper remedy and its only remedy since the goods had been disposed of by appellants before the suit was filed. Willis v. Yates, 12 S. W., 232; Holloway Seed Co. v. Bank, 47 S. W., 95; Kohn v. Fishback, 36 Wash., 62, 78 Pac., 199; LeGierse & Co. v. Kellum & Rotan, 66 Texas, 242; Kessler

v. Halff; 21 Texas Civ. App., 91, 51 S. W., 48; Wachsmuth v. Sims, 32 S. W., 821, 14 Am. & E. Enc. of L., 351, 790; Everett Produce Co.·v. Smith Bros., 40 Wash., 566, 2 L. R. A., (N. S.) 331; Rothchilds Bros. v. Trewella, 68 L. R. A., 281; Blum v. Goldman, 66 Texas, 621; 2 Moore on Fraudulent Con., p. 745; 20 Cyc., 663; Interstate Rubber Co. v. Kauffman, 153 N. W., 585; McDaniel v. Bryan, 100 S. W., 1103; Patten v. Whitten, 155 S. W., 83; Jaques & Tinsley v. Carstarpham Warehouse Co., 131 Ga., 1, 62 S. E., 87; Hungerford v. Greengard, 95 Mo. App., 653, 69 S. W., 603; Bewley v. Sims, 145 S. W., 1076.

When the answer of the garnishee is controverted the statutes provide that an issue shall be formed under the direction of the court, and tried as other cases. The issue is not required to be in writing. No special exception having been made to the omission to allege a sale of the goods by the garnishees, and evidence of the sale having been admitted without objection, and the cause having been tried· by the court without a jury, it will be presumed that the court had before it the proper issues, and if not it is too late to complain that the issue was not properly formed, and that the judgment does not conform to the allegations. Sayles' Statutes, art. 247; 2 App. Civ. Cases, sec. 628; 3 App. Civ. Cases, 86; Atkins v. Watson, 12 Texas, 200; Phoenix Ins. Co. v. Willis, 6 S. W., 829; Lindsey v. Morris, 13 So., 619; Birmingham Bank v. Mayer, 16 So., 520.

*T. C. Wilkinson,* for defendant in error.—Garnishees having answered that they were not indebted to the defendant, and that they·had no effects belonging to him in their possession; and the plaintiff, in its controverting answer, having alleged as the sole ground of garnishees' liability, that the defendant had sold and transferred the stock of goods, and the evidence conclusively and admittedly showing that the garnishees had paid defendant in full for said goods, wares and merchandise before said writ was served on them—and that too, in part, with a negotiable promissory note; and also that they had no effects of his in their hands at the time of the service of said writ, and at the time they filed their answer; and the evidence also failing to show any fraudulent intent on the part of said defendant, C. K. Sweet, or said garnishees, in the making of said sale and transfer by him to them, the process of garnishment was, and should be held to be, ineffectual against them as for a debt due by them to defendant, even though it had been alleged that they had disposed of said goods, wares and merchandise, and the amount they had received for them had been stated. Seed Company v. National Bank, 92 Texas, 187-194; Houston Drug Co. v. Kirchain, 71 S. W., 608-610.

The statute known as the "Bulk Sales Law" enacted by the Thirty-first Legislature, the failure to observe the terms of which rendered fraudulent and void, as held by the trial court, the sale and transfer of said goods by the defendant, C. K. Sweet, to garnishees, is in violation of the fourteenth amendment of the Constitution of the United States

as class legislation favoring, as it does, one class of creditors, to-wit: the creditors of sellers of stocks of merchandise, by granting them superior rights, and denying all others the equal protection of the laws; and is also in further violation of said amendment, and of section 19 of the Bill of Rights of the Constitution of the State of Texas, in that it deprives certain of the citizens of the State, to-wit: Sellers of stocks of merchandise, of liberty, property, privileges and immunities, without due process of law, and contrary to the due course of the law of the land. Black v. Schwartz (Utah), 101 Am. St. Rep., 971-988; McKister v. Sager (Ind.), 106 Am. St. Rep., 269-281; Miller v. Crawford, 80 Ohio St., 210, 71 N. E., 631; Wright v. Hart, 182 N. Y., 33, 75 N. E., 404; Neas v. Borches, 109 Tenn., 398, 71 S. W., 50-52 (dissenting opinion of Wilkes, J.).

MR. JUSTICE YANTIS delivered the opinion of the court.

This case involves, as the main questions, the constitutionality of what is commonly known as the "Bulk Sales" law, passed by the Thirty-first Legislature, and the effect of the service of the writ of garnishment upon  the proceeds of the sale of merchandise which was purchased by McIntosh & Warren, defendants in error, at private sale, and not in the ordinary course of trade, but in bulk, and in violation of all the provisions of said "Bulk Sales" statute, and afterwards resold by them and converted into cash prior to the service of the writ of garnishment upon them, which was issued at the instance of the Owosso Carriage & Sleigh Company, plaintiff in error.

Trial in the court below was had on an agreed statement of facts, which showed, substantially, as follows:

One C. K. Sweet was engaged in the implement, vehicle and hardware business in the town of Brownwood. The evidence strongly indicates that on the 10th day of August, 1909, he was insolvent; on said date, and for at least thirty days prior thereto, he was indebted to the plaintiff in error, a foreign creditor, in the sum of $1700.00 for vehicles, etc., sold him by the plaintiff in error for use in said business; he was also indebted to various other wholesale dealers for goods used in said business, among them the Keating Implement and Machinery Company for $3,617.95, and the Emerson Manufacturing Company for $1,294.00. He owed various other creditors in the aggregate sum of $3,000.00. On said 10th day of August, 1909, he sold his stock of goods in bulk to McIntosh & Warren, defendants in error, for the consideration of $6,005.97, they assuming the payment of said $3,617.95 to Keating Implement and Machinery Company, and $1,294.00 to the Emerson Manufacturing Company as a part of said consideration, and paying to said Sweet in cash the sum of $500.00, and giving him one negotiable promissory note for $594.02, due January 1, 1910, which was paid to said Sweet on the day of its maturity. The consideration paid was a fair price for the property. At the time of said transfer and sale of said merchandise the said Sweet had no other property except some nego-

tiable promissory notes, amounting in the aggregate to about $7,000.00, due him by various customers scattered over his trade territory, for merchandise which had been sold to them. The evidence shows that if the crops had been good in that section for the years 1909 and 1910 said notes would have been worth something like their face value; but the crops were unusually short, and said notes were worth only about fifty cents on the dollar, and at the time of trial it was agreed that Sweet was unable to pay all of his creditors, and was insolvent.

On October 19, 1910, plaintiff in error filed suit against the said Sweet on a promissory note in the sum of $1,695.34, and interest thereon, and at the same time caused a writ of garnishment to be issued, which was served upon the defendants in error on the 20th day of October, 1910.

On the 20th day of December, 1910, plaintiff in error recovered in said suit its judgment against said Sweet in the sum of $1,883.60, with costs of suit and interest at the rate of eight per cent.

The evidence indicates that there was no intentional fraud upon the part of the defendants in error in purchasing said merchandise, or on the part of said Sweet in making the sale, and while there is no distinct finding of fact by the trial court, or in the statement of facts to this effect, we will assume such to be true in the consideration of the issues.

In making the purchase of said merchandise, the defendants in error did not at least ten days prior thereto or at any time prior to the sale, make inquiry of the said Sweet, the transferrer of said goods, as to the names and places of residence, or place of business of each and all creditors of said Sweet, and the amount owing to each said creditor by him, or obtain from him a written answer in any form to such inquiries; nor did they ten days prior to said purchase, or at any other time before said sale, notify each of the creditors of said Sweet of said proposed sale and transfer. The plaintiff in error had no notice of said proposed sale at any time before it occurred, and the "Bulk Sales" statute of 1909 was not complied with in any form in making said sale.

Defendants in error, who were the garnishees, answered said garnishment suit to the effect that they were not indebted to said Sweet in any amount at the time said writ was served, or afterwards, nor at the time of answering the same, and that they did not have any of his effects in their possession.

Plaintiff in error contested this answer, alleging both that they were indebted to said Sweet, and that they had effects of said Sweet in their possession at the time said writ was served, in that they purchased the stock of goods without complying with the "Bulk Sales" statute.

The plaintiff in error did not allege that the defendants in error had sold said merchandise prior to the service of the writ of garnishment, and the defendants in error did not file any special exception to said pleading for said omission, but the defendants in error by their second special exception excepted to said pleading, as follows:

"Because it appears from said controverters' affidavit that plaintiff is

endeavoring to hold these garnishees liable for property that has passed out of their possession, on the ground that they should be held as trustees for property wrongfully received by them."

In section ten of the agreed statement of facts it appears that it was proven at the trial that the defendants in error, who were the garnishees, had sold all of said goods, wares and merchandise prior to the service on them of the writ of garnishment, and that they had realized from same at least as much as they had paid for them. It does not appear which party to the suit introduced the evidence, and neither does it appear that either party to the suit objected to its introduction. It also appears that in their sixth assignment of error the defendants in error assert the fact of sale by them prior to the service of the writ of garnishment, and ask relief because of that fact, claiming that, having already sold the property before the service of the writ, no lien attached, and no liability arose against them.

Upon the trial of the case in the court below plaintiff in error was awarded judgment against the defendants in error for the sum of $1,094.00, with six per cent interest from the date of said judgment, which is the amount that was paid by defendants in error to Sweet as a part of the consideration for the transfer; but the trial court did not enter a judgment against the defendants in error for the full amount of the plaintiff in error's judgment against Sweet, which was $1,883.60, and the plaintiff in error's cross assignment complaining of the failure of the trial court to render judgment against the defendants in error for the full sum was abandoned on motion for rehearing in the Court of Civil Appeals.

The judgment of the trial court was reversed and remanded by the Honorable Court of Civil Appeals for the Third District, with instructions that a reasonable attorney's fee be allowed by the court below in favor of the attorney for the defendants in error, said court holding that the writ of garnishment was served too late to be effective, on account of the resale of merchandise before its service.

The "Bulk Sales" law, so far as material to a correct determination in this case, is as follows:

"Section 1. That any sale or transfer of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the usual and regular prosecution of the seller's or transferrer's business; or a sale or transfer of an entire stock of merchandise in bulk, shall be void as against creditors of the seller or transferrer unless the purchaser or transferee shall at least ten days before the sale or transfer, in good faith make full and explicit inquiry of the seller or transferrer as to the name and place of residence or place of business of each and all creditors of the seller or transferrer, and the amount owing to each such creditor by the seller or transferrer, and obtain from the seller or transferrer a written answer to such inquiries, which answers shall be sworn to by the seller or transferrer; and unless the purchaser or transferee at least ten days before the sale or transfer in good faith, notify or

cause to be notified personally or by registered mail each of the seller's or transferrer's creditors of whom the purchaser or transferee has knowledge, of said proposed sale or transfer.

"Sec. 2. Any purchaser or transferee who shall conform to the provisions of this act shall not in any way be held accountable to any creditor of the seller or transferrer for any of the goods, wares or merchandise that have come into the possession of said purchaser or transferee by virtue of such sale or transfer.

"Sec. 3. Nothing in this Act shall apply to sales by executors, administrators, receivers or any public officer conducting a sale in his official capacity, nor to a sale or transfer of stocks of merchandise for the payment of bona fide debts where all creditors share equally and without preference in the sale or transfer or the proceeds thereof."

The defendants in error assail the constitutionality of the Act. If the Act is an unreasonable restraint of the natural rights of the owners of merchandise over their control and use of their property, and their right of contract connected therewith, it should be held unconstitutional; but if it is merely a proper exercise of the police power of the State in a wholesome restraint upon the said natural rights for the common good, then the said Act would not be repugnant to the organic law. An unreasonable restraint of the natural rights of the owners of merchandise over the control and use of their property and their right of contract connected therewith, would be intolerable, and violative of rights guaranteed under the Constitution; but a wholesome restraint upon the natural rights of such owners for the common good would be within the police power of the State, and, therefore, valid.

The identical question involved here was before this court in the case of Nash Hardware Company v. Morris, 105 Texas, 217, 146 S. W., 874. In that case the conclusion was reached by this court, speaking through the late Chief Justice Brown, that the Act was within the police power of the State, and was a reasonable regulation, and not in violation of the Constitution. We approve the holding in that case, and overrule the assignment which assails the constitutionality of the Act.

Passing from this we will now consider the important question as to the effect of the service of the writ of garnishment upon the defendants in error subsequent to the sale of the merchandise by them, which they had purchased from Sweet. It is contended that the garnishment did not fasten upon either the property belonging to Sweet, or upon its proceeds after sale, for the reason, as asserted, that the property belonging to Sweet, which passed into the hands of the defendants in error, had been sold by them, and that the proceeds of the sale could not be reached by the writ of garnishment, and that the writ of garnishment would not be effective unless served before such sale. Upon the other hand, the contention is made that the writ of garnishment took effect and became a lien upon the proceeds of the sale of said merchandise.

In considering this question it should be remembered that the purchase by defendants in error from Sweet, however innocently intended, was in open violation of the "Bulk Sales" law, and under section one thereof, "void as against creditors of the seller." There was, then, no real sale, in law, but merely a change of possession. The parties could not accomplish that which was prohibited by law. The possession was transferred from Sweet to the defendants in error, which left them holding it in trust for the benefit of Sweet's creditors, with the title still in Sweet. This necessarily follows as the result of the attempted sale being rendered void by the statute. A contract between citizens, however honestly made, can not prevail as against a statute which prohibits the making of the contract. Either the contract or the statute must fall in such a clash, and it could not be seriously contended that two or more citizens of a State could repeal the State's laws by contract among themselves. Neither could they defy the State's laws, and expect the courts to uphold them. And if any one should suffer loss in the attempt, it should not fall upon a creditor who has been diligent to act within the law, but rather upon the ones who produced the situation and caused the loss.

Defendants in error had not the power nor the right to acquire title to this property as against creditors, for the statute in cases of this kind impounds and holds the merchandise for the benefit of the creditors of the seller. And since their act in attempting to purchase was void, it follows, as stated above, that the title to said property remained in Sweet, the seller, and did not pass to the defendants in error, and when defendants in error sold said merchandise, the proceeds of said sale were subject to garnishment.

When the defendants in error sold the merchandise, the title to which remained by law in Sweet, they became indebted to Sweet for its value. Having sold and converted property which, in law, belonged to Sweet, it obviously follows that they owed him for its value. It is true, the law would not aid Sweet in recovering its value from the defendants in error, for having acted in the sale in open violation and defiance of a statute, public policy would deny him a remedy, and leave the parties to the legal wrong where it found them. Especially would this be true since the statute in question under the circumstances of this sale holds the property for the benefit of Sweet's creditors, and the courts would not aid Sweet to withdraw it beyond their reach. But the plaintiff in error is not in the same attitude as Sweet. Not having participated in the wrong-doing, the law would aid it to recover the fund set apart by statute for creditors. Now the evidence shows that the defendants in error sold the merchandise for at least as much as they agreed to pay for it. In other words, the evidence shows that the defendants in error sold Sweet's property for at least as much as $6,005.97, and at the time the writ of garnishment was served they still were indebted to Sweet in said sum, and the garnishment fastened upon said fund.

The identical question presented here has not been adjudicated by this

court in connection with the "Bulk Sales" statute. In other jurisdictions the authorities appear to be somewhat in conflict, but the weight of authority is to the effect that when one purchases merchandise in violation of the "Bulk Sales" law, he holds the property not for himself, but as trustee for the seller's creditors, who may reach the trust fund by writ of garnishment, even though the purchaser has paid full value for the merchandise and has resold it. 14 Am. and Eng. Encyc. of Law, pages 341 and 790; Waite on Fraud. Conveyances, sec. 177; Bump on Fraud. Conveyances, 567; Moore on Fraud. Conveyances, vol. 2, 743; 20 Cyc., 663; Interstate Rubber Company v. Kaufman et. al., 153 N. W., 585; Ferguson v. Hillman, 55 Wis., 181, 12 N. W., 394; Musselman Grocery Company v. Kidd, Dater & Price Company, 151 Mich., 478, 115 N. W., 409; Marquette County Savings Bank v. Koivisto, 162 Mich., 554, 127 N. W., 680; Jaques & Tinsley Company v. Carstarphen Warehouse Company, 131 Ga., 1, 62 S. E., 82; Kohn v. Fishbach, 36 Wash., 69, 104 Am. St., 941, 78 Pac., 199; Armstrong v. Elbert, 14 Texas Civ. App., 141, 36 S. W., 139; Willis v. Yates, 12 S. W., 232; Holloway v. Bank, 92 Texas, 187, 47 S. W., 93.

This holding is not in conflict with Legeirse v. Kellum, 66 Texas, 243, 18 S. W., 509; Kessler v. Halff, 21 Texas Civ. App., 91, 51 S. W., 48, and Blum v. Goldman, 66 Texas, 623, 1 S. W., 899. The holding in those decisions is to the effect that a creditor of an insolvent debtor can not in a direct proceeding, without the aid of garnishment or other lien, obtain personal judgment against the purchaser, even though he purchase for the purpose of hindering, delaying and defrauding the creditors of such debtor. The soundness of such holding could hardly be questioned, since in such a case the creditor did not lose anything by the wrong-doing of the fraudulent creditor in making the purchase. All the creditor lost was an opportunity to levy upon the goods of the debtor, but this damage is too remote to create a cause of action. In those cases no lien by garnishment, attachment or otherwise, had been acquired by the creditor, while in the instant case a garnishment lien was secured.

The complaint by the defendants in error that there was error in rendering judgment for the plaintiffs in error because they failed to allege that the merchandise had been sold prior to the service of the writ of garnishment is without merit, since, as noted in this opinion, the defendants in error were indebted to Sweet for the value of the merchandise at the time the writ of garnishment was served, and it would seem unnecessary to plead in what manner they became so indebted. However this may be, they did not except to the pleading on said ground, and themselves made the allegation that they had disposed of the property prior to the service of the writ. They also allowed the proof to be offered without objection. Under such circumstances they should be held to have waived error on the question.

There being no cross assignment of errors by the plaintiff in error be-

fore this court, complaining of the action of the trial court in not rendering judgment for the entire debt due by Sweet, it is unnecessary for us to decide whether a judgment should have been rendered for the entire debt due by Sweet to them.

For the reasons indicated the judgment of the Court of Civil Appeals should be reversed, and the judgment of the trial court should be affirmed, and it is so ordered.

Opinion delivered October 13, 1915.