**FISCHER et al. v. RIO TIRE CO. et al.**

No. 1710—6242.

Commission of Appeals of Texas, Section A.

Nov. 28, 1933.

Fischer & Fischer, of Amarillo, and Weeks, Morrow & Francis, of Wichita Falls, and F. W. Fischer, of Tyler, for plaintiffs in error.

A. H. Brittain and Carrigan, King & Surles, all of Wichita Falls, for defendants in error.

SHARP, Judge.

The pleadings in this case are voluminous, and, for the purposes of this opinion, only the controlling parts thereof will be referred to. On August 28, 1930, Spectralite, Inc., filed suit in the district court of Wichita county against the Rio Tire Company, a Texas corporation, and alleged that it was a creditor of Eugene Segall, who had transacted business in Wichita Falls under the trade-name of Segall Tire Company. It alleged that the Segall Tire Company had been from November, 1928, indebted to plaintiff in the sum of $4,700, together with interest from and after November 1, 1928, plus the sum of approximately $75 court costs, which indebtedness is and was conclusively established by judgment dated July 16, 1930, rendered in the Seventy-Eighth district court of Wichita county in cause No. 22219-B in the case of Spectralite, Inc., v. Eugene Segall. It was also alleged that Segall was a nonresident of the state and is insolvent and has been insolvent since November, 1928, and for some time prior thereto, which fact was well known to the Rio Tire Company, and that plaintiff is unable to collect its debt from Segall; that, as a creditor of Segall, plaintiff brings this suit against the Rio Tire Company on behalf of itself and such other creditors of Segall as may have indebtedness against him, or who may hereafter intervene.

It is further alleged that during the latter part of the year 1928, or in the early part of the year 1929, Segall fraudulently sold and transferred to the Rio Tire Company all of his stock of goods, wares, and merchandise located in the city of Wichita Falls, and such transfer of said property, which was reasonably worth more than $15,000, was made with the intent to delay, hinder, and defraud plaintiff and other creditors of their debts, and such transfer of the aforesaid property is void under article 3996, R. S. 1925, as amended by Acts 1927, c. 30 (Vernon's Ann. Civ. St. art. 3996); that the Rio Tire Company knew that the transfer of the property by Segall was for the fraudulent purpose of defrauding his creditors and giving the Rio Tire Company a preference on past-due indebtedness. It is also alleged that the sale by Segall to the Rio Tire Company was void by reason of article 4001, R. S. 1925, in that the provisions of that article were not complied with; that the transfer of the property was made in part to settle a debt owing by Eugene Segall to the Rio Tire Company or to the Goodyear Tire Company, for whose use and benefit the transfer was made to the Rio Tire Company, which is a dummy corporation which took title to the property for the use and benefit of the Goodyear Tire Company, a creditor of Segall.

The Rio Tire Company filed its answer consisting of general demurrer, special exceptions, general denial, and special answer. It alleged that on or about March 11, 1929, Segall sold to the Rio Tire Company all of his stock in trade, fixtures and other assets pertaining to his business, and for which the defendant agreed to pay the sum of $14,675.-70; that the contract provided that Segall should comply with the Bulk Sales Law and would furnish an affidavit at the time of closing to the effect that he had no unpaid indebtedness or liability on the date thereof; that Segall warranted that he had no unpaid indebtedness, etc., and a copy of the contract of purchase was attached to the answer; that, prior to taking possession of the stock, and prior to the time the company paid Segall the consideration, it demanded and received from Segall a written list of the names and addresses of his creditors with the amount of indebtedness due or owing to each and certified by Segall under oath to be a full, accurate, and complete list of his creditors and of his indebtedness, and that in making such demand the Rio Tire Company acted in good faith, and in order to comply with articles 4001, 4002, and 4003, Revised Statutes 1925; that Segall furnished an affidavit whereupon he stated on oath that he had no creditors and owed no debts, and that the affidavit was given as an inducement in connection with the purchase by the Rio Tire Company of the stock, etc., and in conformity with the requirements of the Bulk Sales Law; that the affidavit was made on the 11th day of March, 1929, and furnished to the Rio Tire Company on the same day and prior to the time it took possession of the stock, merchandise, fixtures, etc. It further answered that the tools, etc., of the value of more than $6,000 were not subject to the Bulk Sales Law.

Plaintiff amended its pleadings, and alleged that its debt due by Segall was by virtue of a contract, in which Segall promised to pay the plaintiff certain rentals on an electric lighted sign, and there was a balance due of $5,600, and that Segall agreed to pay three-fourths thereof, amounting to $4,200; that in December, 1928, plaintiff filed a suit against Segall and recovered a final judgment against him in the sum of $4,700, together with interest and court costs.

The cause was submitted to a jury upon one issue which reads:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the officers of the Rio Tire Company were informed or had knowledge of the claim of the Spectralite Company against Segall at the time they closed their trade with Segall?

"Answer Yes or No.

"Answer: Yes."

No other issues were submitted and none requested by either plaintiff or defendant.

On December 20, 1930, plaintiff filed a motion for the entry of an interlocutory decree in its favor. This was contested, but the trial court entered the decree on December 30, 1930, and the court ordered the Rio Tire Company to file with the clerk of the court within ten days a verified statement showing what merchandise, equipment, fixtures, trucks, automobiles, accounts and bills receivable, and the value thereof, that it purchased and took over from Segall on March 11, 1929; that it show what disposition it had made of said merchandise, etc., and, if all or any part had been disposed of, the amount received therefor and what amount is still on hand; that it show the amount of debts of the said Segall that it paid for him as part of the purchase price of said property, and what debts, if any, other than the debt of the Spectralite, Inc., it has knowledge of that are still owing by said Segall. The cause was continued on the docket for such further action and orders of the court as shall be necessary until the final disposition of the case is had.

The Rio Tire Company filed a verified statement, in which it showed the total consideration involved, less a tax item, was $14,675.70, which consisted of merchandise valued at $479.43, trade fixtures valued at $722, prepaid insurance, $246.37, unexpired insurance on Ford cars, $32.30, accounts receivable, $7,737.30, tools, apparatus, etc., valued at $5,466.45.

No interventions were filed within the ten days allowed by the court in the first order dated October 9, 1930. On January 17, 1931, the court ordered published a second notice to the creditors to intervene, and in response to the second notice the following creditors of Segall intervened, and claimed the following indebtedness, to wit: F. W. Fischer, an amount of $500; J. D. White, an amount of $750; William H. Fehler, an indebtedness on a certain promissory note; the Wichita Falls municipality and the Wichita Falls independent school district for certain taxes alleged to be due. Some of the claims of interveners were alleged to be predicated on judgments already obtained. The court heard testimony on behalf of the interveners and entered judgment in favor of the following parties and for the amounts specified, to wit: Spectralite, Inc., in the sum of $4,700 and interest; F. W. Fischer in the sum of $500; Wichita Falls independent school district in the sum of $153.72; the city of Wichita Falls in the sum of $204.96; and William H. Fehler in the sum of $5,281.45. On the 28th day of January, 1931, the trial court entered final judgment in this cause. The judgment is quite lengthy, and we will refer only to those parts pertinent to a decision of this case. The court in the judgment entered herein, in substance, made the following findings:

(1) The court found that on March 11, 1929, and prior thereto Segall was indebted to the Spectralite, Inc., in the sum of $4,700, with interest thereon at 6 per cent. per annum from and after November 1, 1928.

(2) That on March 11, 1929, the Rio Tire Company purchased and took over in bulk all of the merchandise, fixtures, equipment, and accounts receivable of the said Segall, and failed to give notice to the creditors of Segall of its intention to purchase and take over said property in bulk.

(3) That the Rio Tire Company, having failed to give the notice as required by law, took the property it received from Segall as trustee or receiver for the benefit of the Spectralite, Inc., and other creditors of said Segall, and is accountable to them for the value of said property.

(4) That the trial court entered an interlocutory decree, and assumed jurisdiction of said property or the proceeds thereof, so transferred by the said Segall to the Rio Tire Company, and ordered that company to file herein an account showing the kind and quantity of the property it received from said Segall, the value thereof, etc.

(5) That on December 30, 1930, the Rio Tire Company filed a statement with reference to the merchandise, etc., received from Segall, and the court finds that the Rio Tire Company received from said Segall merchandise of the value of $7,776.23 and fixtures of the value of $6,188.45, the aggregate of the same being $13,964.68. That, while a portion of said fixtures are denominated by the Rio Tire Company in its report as tools, the court finds that all of the same are attached to the premises and used by the said Segall in carrying on his business, and that said fixtures, etc., are contemplated by the Bulk Sales Law, and that none of said property was exempt to Segall. That the Rio Tire Company received from Segall accounts receivable in the sum of $7,737.30, etc.

(6) That Segall was due the Wichita Falls independent school district taxes for the year 1928 in the sum of $153.72, and that for the year 1928 he owed the city of Wichita Falls taxes in the sum of $204.96. That the indebtedness claimed by Fischer, Fehler, and White was in the amounts already stated above. That the only other indebtedness owed by the said Segall on March 11, 1929, was a debt in the sum of $800 to Newton Maer and a debt of $10,000 to the Goodyear Tire & Rubber Company, which indebtedness was paid by the Rio Tire Company at the time it took over the property in controversy.

(7) That the Goodyear Tire & Rubber Company participated in the unlawful sale and transfer of the property belonging to Segall to the Rio Tire Company, and the Goodyear Tire & Rubber Company sent its agents to Wichita Falls to negotiate with Segall for the purchase of his property for a corpora-

tion to be organized to take and hold the same, and that, after said negotiations were consummated and the purchase agreed upon, the Rio Tire Company, a corporation, was organized by said agents under the laws of Texas, the stock of which is practically all, if not all, held by the Goodyear Tire & Rubber Company, and that in that transaction the Goodyear Tire & Rubber Company and the Rio Tire Company, both acting through the same agents, and evidently with the intent to evade the operation of the Bulk Sales Law as to the new tires and tubes on hand, and thereby procure for the Goodyear Tire & Rubber Company a preference over the other creditors in the payment of its debt in full, gave the said Segall a credit upon his indebtedness to the extent of the value of the new tires which he had on hand, and which was $7,296.80, and said Goodyear Tire & Rubber Company, in turn, turned over said tires to the Rio Tire Company; that the Goodyear Tire & Rubber Company has not intervened herein for any balance due it.

(8) That no change in possession of the tires was had from Segall to the Goodyear Tire & Rubber Company, but the same remained in his place of business with the remainder of his property, and was taken over by the Rio Tire Company with such other property that it took from Segall.

(9) That, the officers of the Rio Tire Company having full knowledge of the transaction between Segall and the Goodyear Tire & Rubber Company, the Rio Tire Company is accountable to the creditors of Segall for the value of said tires and tubes the same as it is for the other property that it received from Segall; and that, on account of the action and conduct of the Goodyear Tire & Rubber Company, it would be estopped from claiming upon the indebtedness held by it a pro rata part of said property or the proceeds thereof taken over by the Rio Tire Company from Segall. Likewise the Rio Tire Company is estopped from taking credit to itself as an offset against its accountability to the creditors of said Segall any sums that it has paid to the Goodyear Tire & Rubber Company upon the indebtedness of Segall.

(10) That the Goodyear Tire & Rubber Company not having intervened herein and the Rio Tire Company not having asserted herein that it is entitled to any credit or offset as against its accountability for the property received by it for any debts of the said Segall paid by it, with the exception of the debt to Newton Maer of $800 and the debt to the Goodyear Tire & Rubber Company of $2,703.20, which amount the court holds it is not entitled to take credit to itself, and that the only debts that have been presented and proved to be entitled to be first paid out of the property of the said Segall are the debts of Spectralite, Inc., and the interveners and the debt of Maer in the

sum of $800, which was paid by the Rio Tire Company, all of which aggregate the sum of $12,360.13, besides interest at 6 per cent. due on the debt of Spectralite, Inc., for $4,700, all of which is less than the value of the merchandise and fixtures received by the Rio Tire Company, which does not include the value of the accounts receivable that were received from him amounting to $4,237.30.

(11) That the Rio Tire Company has converted all of said merchandise, fixtures, and equipment to its own use and benefit, and while, as shown by its report, it still has on hand some of the fixtures acquired by it, yet the court finds under all the circumstances that, inasmuch as the Rio Tire Company received more than enough to pay all of the debts of the said Segall that have been proved and are entitled to be paid pro rata out of the property, it is just and equitable that said Rio Tire Company should pay said debts in full, and that it would be inequitable to such creditors to resort to a sale of that part of the property still on hand after it had been converted by the Rio Tire Company and used by it two years and pay to them only their proportion of what the same might now bring at said sale.

An appeal was made to the Court of Civil Appeals at Fort Worth, and that court reversed and rendered judgment against F. W. Fischer, J. D. White, and William H. Fehler, and reversed and remanded the case as to all other parties. 48 S.W.(2d) 367.

■ The Rio Tire Company contends that the court erred in overruling its objection to the special issue submitted to the jury for the reason that the question is in the disjunctive, inquiring, first, whether the officers of the Rio Tire Company "were informed," and, second, as to whether they "had knowledge," using the word "or" between the two questions. While this issue may not have been phrased in the most desirable form, yet, when we consider the terms "were informed" and "had knowledge," we find their meaning, in the light of the evidence, so alike as not to render the issue duplicitous. Both the terms mean, in the form used, Did the Rio Tire Company have notice of the claim of the Spectralite, Inc., against Segall at the time it closed the trade with him? No harm resulted from submitting the issue as was done. This contention is overruled.

The Legislature of this state, as well as the Legislatures of practically every other state in the Union, responded to the demand for legislation to protect creditors from loss by sale of part or in whole of a stock of merchandise and fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and the law enacted in this state declared such sale void unless certain conditions were complied with. In 1909 the Legislature of this state

enacted the original Bulk Sales Law (Laws 1909, c. 27). That the Legislature has the power to enact such legislation is now clearly established. Nash Hardware Co. v. Morris, 105 Tex. 217, 146 S. W. 874; Owosso Carriage Co. v. McIntosh & Warren, 107 Tex. 307, 179 S. W. 257, L. R. A. 1916B, 970. For a discussion of the authorities upholding the police power of the state to enact this kind of legislation, see, also, Ann. Cas. 1915C, 414. The original Bulk Sales Law was construed in a number of cases. Owosso Carriage Co. v. McIntosh & Warren, supra, 107 Tex. 307, 179 S. W. 257, L. R. A. 1916B, 970; Gerlach Mercantile Co. v. Hughes-Bozarth-Anderson Co. (Tex. Civ. App.) 189 S. W. 784, 789 (17); Eagle Drug Co. v. White (Tex. Civ. App.) 182 S. W. 378; Barcus v. Parlin-Orendorf Implement Co. (Tex. Civ. App.) 184 S. W. 640, 641; Bewley v. Sims (Tex. Civ. App.) 145 S. W. 1076, 1077.

In the case of Bewley v. Sims, supra, it was said: "It is true the act declares void any sale such as here alleged; but no trust relation, and no lien upon or right in the property so unlawfully purchased, is specifically conferred upon the vendor's creditors, as would have been so easy, had such been the legislative purpose."

Some courts in other jurisdictions also held that, where the purchaser had disposed of the goods, he could not be held liable as a trustee. McGreenery v. Murphy, 76 N. H. 338, 82 A. 720, 39 L. R. A. (N. S.) 374, and the notes thereunder.

. In 1915 the law was amended, and articles 4001 et seq., R. S. 1925, constitute the present Bulk Sales Law. They will control in this case. The pertinent articles read as follows:

"Art. 4001. The sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or transferor, shall be void as against the creditors of the seller or transferor, unless the purchaser or transferee demand and receive from the transferor a written list of names and addresses of the creditors of the seller or transferor with the amount of the indebtedness due or owing to each and certified by the seller or transferor under oath to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser or transferee shall at least ten days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify personally or by registered mail each creditor whose name and address is stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof. Any

purchaser or transferee who shall not conform to the provisions of this law shall, upon application of any of the creditors of the seller or transferor become a receiver, and be held accountable to such creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale or transfer.

"Art. 4002. Any purchaser or transferee who shall conform to the provisions of the preceding article, shall not in any way be held accountable to any creditor of the seller or transferor for any of the goods, wares, merchandise or fixtures that have come into possession of said purchaser or transferee by virtue of such sale or transfer."

■■ The foregoing articles have been construed by the courts of this state, and the rule has been announced that, where there has been no effort made to comply with the foregoing act, the liability of the purchaser thereof is expressed in the following language:

"The liability of a purchaser of a stock of goods and fixtures in violation of the Bulk Sales Law is that of a receiver. Having taken the property subject to the rights of creditors, he becomes bound in equity to see that the property or its value is appropriated to the satisfaction of claims of the creditors of his seller. He becomes the trustee of an express trust, and is subject to the same duties and liabilities of such a trustee. We think the law was intended to charge him with liability, however, only to the extent of the value of the property received by him, and this liability is to all of the creditors pro rata. As aptly stated by the Supreme Court of Arkansas in the case of Stuart v. Bank & Trust Co., 123 Ark. 285, Ann. Cas. 1918A, 268, 185 S. W. 263:

" 'The Bulk Sales Act does not make the person who fails to comply with its provisions liable for all the debts of the seller. It treats the sale as being void and the purchaser as being a receiver and his possession as being for the benefit of all the creditors. He is like any other receiver so far as his liability is concerned. He is responsible for the property purchased, but for that only. If he gets enough property to pay all the debts, he must pay them all. If the property is not sufficient for that purpose, he must pay the creditors pro rata as any other receiver would do.' " Gardner v. Goodner W. G. Co., 113 Tex. 423, 256 S. W. 911, 912. See, also, Texas Bank & Trust Co. v. Teich et al. (Tex. Civ. App.) 283 S. W. 552, writ denied (Tex. Civ. App.) 286 S. W. 577.

■ A distinction should be drawn in a case where no effort was made to comply with the Bulk Sales Law and the sale made in contravention thereof from a case where the purchaser in good faith required the seller to furnish an affidavit showing a list of his

creditors and the seller, by fraud or inadvertence, failed to list some of his creditors. It is undisputed that Segall, on March 11, 1929, executed an affidavit to the Rio Tire Company, in which it was stated "that he had no creditors and no indebtedness on the date herein." Article 4002 describes the liability of a purchaser or trustee who shall conform to the provisions of article 4001. Thus we have a case where the purchaser or trustee did comply with the provisions of the act requiring an affidavit from the transferor showing a list of his creditors. Segall did not list the debts of Spectralite, Inc., and the interveners described herein, but that would not make the sale void. We think a fair and reasonable construction of the statute to be that a purchaser, who in good faith demands and receives an affidavit showing a list of his creditors, or that he has none, should not be held liable to creditors, unless known to him, when the transferor has either by fraud or inadvertence omitted the name of a creditor or stated that he had none. Of course, if the purchaser knew of any claim not listed, that rule would not apply as to the claim not listed known to the purchaser, or if it appears that the purchaser obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if pursued with reasonable diligence, would lead to a discovery of the claim. Brecht Co. v. Robinowitz (Tex. Civ. App.) 275 S. W. 213 (writ refused); McKelvey v. Schaap & Sons Drug Co., 143 Ark. 477, 220 S. W. 827; Glantz v. Gardiner, 40 R. I. 297, 100 A. 913, L. R. A. 1917F, 226; Coach v. Gage, 70 Or. 182, 138 P. 847; International Silver Co. v. Hull, 140 Ga. 10, 78 S. E. 609, 45 L. R. A. (N. S.) 492; Interstate Shirt & Collar Co. v. Windham, 165 Mich. 648, 131 N. W. 102.

■ It is contended that Spectralite, Inc., was not a creditor of Segall as contemplated by the Bulk Sales Law. The act does not define the word "creditor." Therefore it must be accepted in the sense that it is generally used. Article 10, R. S. 1925. In Bouvier's Law Dictionary, volume 1, p. 726, the word "creditor" is defined as follows: "He who has a right to require the fulfillment of an obligation or contract."

The foregoing definition is accepted by the courts of many jurisdictions. See volume 2, Words and Phrases, First Series, 1713, 1714. See, also, El Paso National Bank v. Fuchs, 89 Tex. 201, 34 S. W. 206; Gardner v. Goodner W. G. Co. (Tex. Civ. App.) 247 S. W. 291.

What persons are within the scope of the statute as creditors or others entitled to its benefit has been the object of much discussion in many cases. In 27 C. J. pp. 878 and 879, the authorities are collated, and the rule as reflected by many decisions is stated as follows: "The term 'creditors' as descriptive of the persons in whose favor the statute declares a bulk sale fraudulent and void is usually not restricted to any particular class of creditors, but includes all persons who were creditors of the seller at the time of the sale, although their claims had not been reduced to judgment, or were not due, and although they were not creditors for merchandise, but were merely general creditors of the seller in other transactions."

■ The evidence shows that Segall was in the tire business and had Spectralite, Inc., prepare for him a large electric sign for advertising purposes. The contract for this sign was made in April, 1928, and the sign was prepared specially for Segall. He was to pay for the installation of the sign $100 per month during the time of the contract, which was to run sixty months. The contract contains a provision that, in the event of a failure on the part of Segall to carry out same, then liquidating damages equalling three-fourths of the balance of the rents were to become due. The sale to the Rio Tire Company was about one year later. At the time Rio Tire Company purchased it required Segall to remove the sign, and so stipulated in the contract with him. The testimony tends to show that the Rio Tire Company knew that Spectralite, Inc., was claiming that Segall was indebted to it for the sign. This claim was reduced to a final judgment in favor of Spectralite, Inc., on July 16, 1930, and suit filed against the Rio Tire Company on August 28, 1930. The jury found that the Rio Tire Company had knowledge of this claim in answer to the special issue on March 11, 1929, the time it closed its trade with Segall. We think that Spectralite, Inc., was a creditor of Segall as contemplated by the Bulk Sales Law. This contention will be overruled.

■■ It is also contended that Segall was a necessary party to the suit. It was alleged that Segall was insolvent and a nonresident of the state. The statute exacts of the purchaser that notice be given to each creditor of whose claim he has knowledge at least ten days before taking possession of the property bought or transferred, or paying therefor; and, if the law is not complied with, the purchaser shall become a receiver and be held accountable to such creditors for the property that has come into his possession by virtue of such sale or transfer. Since the sale or transfer by Segall to the Rio Tire Company is valid, except as against creditors of whose claims it has knowledge, and it being established that it had knowledge of the claim of Spectralite, Inc., that company had the right, under the law, to file suit for itself and other creditors similarly situated, and the other creditors similarly situated may intervene and establish their claims. Spectralite, Inc., and the interveners allege that they were creditors of Segall prior to the time the Rio Tire Company received the property from

him. Furthermore, it is shown that Spectralite, Inc., had obtained final judgment in its favor against Segall on July 6, 1930, prior to the time suit was filed against the Rio Tire Company. Fischer alleges that he obtained judgment against Segall on July 2, 1929. Fehler also shows that on the 6th day of December, 1929, he recovered judgment against Segall for the amount of his judgment, and White pleads the facts upon which he claims to be a creditor of Segall. The interveners filed their pleas herein on January 24, 1931. The Rio Tire Company does not contend that Segall should be made a party to this suit in order to permit it to adjust any rights or equities it may have against him by reason of the sale of his property to it. Equity does not fix an inflexible rule in matters where the relationship of receiver or trustee is involved. It is universally acknowledged that necessary or indispensable parties includes all persons who have an interest in the subject-matter of the suit, of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such condition that its final determination may be wholly inconsistent with equity and good conscience.

It is not shown that Segall is interested in the stock of merchandise and fixtures sold and delivered by him to the Rio Tire Company or that he has such rights as require that he be made a party to the suit or that he is an indispensable party to the settlement of the matters before the court. The trial court is authorized to act in a case of this kind as in ordinary receivership proceedings. This contention will be overruled. Gardner v. Goodner W. G. Co., supra; Bank of Commerce & Trusts v. McArthur (C. C. A.) 256 F. 84.

█ The Rio Tire Company, having complied with the Bulk Sales Law by requiring the seller to make an affidavit showing a list of his creditors, would become liable only to those creditors listed and those not listed of whose claims it had knowledge, or was in possession of facts which were sufficient to put it upon inquiry with respect to the claims as above stated. As to those claims of which it had knowledge, the purchaser shall, "upon application of any of the creditors," become a receiver and be held accountable to such creditors like any other receiver so far as his liability is concerned. The buyer is held responsible only for the property purchased. If the property is not sufficient to pay all debts, he must pay the creditors pro rata as any other receiver would do. The purchaser is charged with liability only to the extent of the value of the property received. If the purchaser has disposed of the property received, he would ordinarily be liable for its actual value, subject to certain exceptions or circumstances. 20 Tex. Jur. § 213, pp. 569

and 570, and authorities cited in the notes. The Rio Tire Company having received property subject to the rights of those creditors of whose claims it had knowledge, the law compels the buyer to see that the property or its value is appropriated to the payment of the claims of such creditors. Spectralite, Inc., filed suit for itself, and for the other creditors similarly situated, in a court of competent jurisdiction against the Rio Tire Company. Judgment was entered as above indicated. In order properly to dispose of the matter, the trial court required a verified statement from the Rio Tire Company showing the amount of property received, its character, etc. The court, in the exercise of its power with respect to such proceedings, permitted those holding claims against Segall to intervene. Several creditors did intervene. Under a proper construction of the provisions of the Bulk Sales Law, only those creditors of whose claims Rio Tire Company had knowledge could hold that company responsible under the law. It had knowledge of the claim in favor of Spectralite, Inc. Taxes are not classified as ordinary claims. The tax record is open for inspection, and the amount of taxes due can be ascertained. Failure to list taxes due to the state, county, and city, or any other political subdivision of the state, would not defeat the liability therefor. The buyer must take notice of taxes due, whether listed or not. Under the rule above announced, Spectralite, Inc., Wichita Falls independent school district, and the city of Wichita Falls had the right to present their claims. It appears that the trial court followed the procedure announced in the case of Gardner v. Goodner W. G. Co., supra, wherein it was said:

"Having jurisdiction of the cause and of the parties, the trial court, under proper pleadings, was authorized to require the purchaser to submit an accounting as to all of the property coming into his possession by virtue of the transfer. If the property had been disposed of, such an accounting should necessarily include information as to its value at the time it was received, as well as the amount received by him for the property disposed of. While primarily he would be liable for the actual value of the property, yet there might be circumstances that would limit his liability to the amount actually received by him for the property, if less than its actual value. Stuart v. Bank & Trust Co., 123 Ark. 285, 185 S. W. 266, Ann. Cas. 1918A, 268. If any property received by the purchaser by virtue of the transfer remained in his possession, the court would be authorized to order its sale. The court should then give notice to all creditors to file and prove their claims, as in an ordinary receivership proceeding, barring such claims as might not be filed within a given time. After ascertaining the full amount of

the indebtedness due the creditors of the seller, and the per cent. each were entitled to, the court should order payment of all creditors pro rata from such funds as might be within the custody of the court; or, in case of wrongful conversion, render such a personal judgment against the purchaser as the rights of the parties and all the circumstances of the case required."

■ The point is made that the Bulk Sales Law does not contemplate that the Rio Tire Company would be held accountable for the bills receivable, prepaid insurance, unexpired license on Ford cars, accounts receivable, and certain tools, apparatus, etc., used by Segall in connection with his business. We agree with the contention that the items of prepaid insurance, unexpired license on Ford cars, and accounts receivable are not embraced within the provisions of the Bulk Sales Law, and a purchaser thereof would not be held accountable. As to what is meant by "fixtures pertaining to the conducting of said business" may, on account of the nature of the business, become an issue of fact. The trial court found that the tools, apparatus, fixtures, etc., were used by Segall in carrying on his business, and that they were necessary for that purpose. The trial court also found that the Rio Tire Company has converted all of the merchandise, etc., and some of the fixtures, to its own use and benefit, and has used part of the fixtures for its own use and benefit, and that it would be inequitable to now force the claimants to accept their proportion of what the same might now bring at a sale. After deducting the items of prepaid insurance, unexpired license on Ford cars, and accounts receivable, we will treat the findings of the trial court respecting the other items as binding on this court, because the Court of Civil Appeals did not disturb the findings of the trial court as to those items, and we are unable to say, as a matter of law, that there is no evidence of a probative nature to sustain them.

■ The law is now well settled that a purchaser or a trustee who disposes of or converts to his own use trust property, placing it beyond the reach of the creditors, will be held personally liable therefor. Gardner v. Goodner W. G. Co., supra.

■ The burden rested upon Fischer, White, and Fehler to show by pleadings and proof that the Rio Tire Company had knowledge of their claims under the rule above stated. They did not do this. They failed to meet the burden required of them by law, and the trial court erred in rendering judgment in their favor; but, since there has been much confusion with respect to the construction of this

law, we deem it advisable to reverse and remand the case with the following instructions:

We therefore recommend that both the judgments of the Court of Civil Appeals and of the district court be reversed and this cause be remanded to the district court for further proceedings in accordance with the following instructions:

(1) That under proper pleadings only one issue be determined, and that is whether or not the Rio Tire Company had knowledge of the claims of Fischer, White, and Fehler at the time it received the property from Segall.

(2) That the trial court enter judgment in favor of the following parties, to wit: City of Wichita Falls for the sum of $204.96, with interest thereon at the rate of 6 per cent. per annum from the 28th day of January, 1931, and costs incurred in its behalf; the Wichita Falls independent school district for the sum of $153.72, with interest thereon at the rate of 6 per cent. per annum from the 28th day of January, 1931, and costs incurred; and subject to the following instructions in favor of Spectralite, Inc., for the sum of $4,700, with interest thereon at the rate of 6 per cent. per annum, from November 1, 1928, and costs incurred.

(3) That, after deducting the amounts of prepaid insurance, unexpired license on Ford cars, and accounts receivable from the aggregate amount found by the trial court that the Rio Tire Company was liable for, if the amount is sufficient to pay all final judgments rendered, that final judgment for the full amount be rendered in favor of the respective claimants listed herein of which Rio Tire Company had knowledge. If the amount is not sufficient to pay all final judgments rendered, then the judgment will be rendered on a pro rata basis, with the exception of the judgments rendered in favor of the city of Wichita Falls and the Wichita Falls independent school district, which two judgments shall have preference over all other judgments rendered.

(4) That the costs of the appeal to this court be taxed one-half against the Rio Tire Company and the other one-half equally against Fischer, White and Fehler.

CURETON, Chief Justice.

The judgments of the Court of Civil Appeals and district court are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.